*Honorable Tiffany M. Cartwright*

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| TIFFANY SHEFFIELD, on their own behalf and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NEOSTRATA COMPANY, INC. D/B/A NEOSTRATA AND EXUVIANCE,<br><br>Defendant. | No. 3:26-cv-5764<br><br>DEFENDANT NEOSTRATA COMPANY, INC.'S MOTION TO DISMISS<br><br>Noted on Motion Calendar:<br>September 28, 2026 |



DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA 98104-7029 | Tel: 206.839.4800

**TABLE OF CONTENTS**

I. INTRODUCTION ........ 1

II. STATEMENT OF FACTS ........ 2

III. LEGAL STANDARD ........ 6

IV. ARGUMENT ........ 6

A. Plaintiff Does Not State a Valid CEMA Claim Regarding Each of the Challenged Emails. ........ 8

*1. Plaintiff Cannot State a CEMA Claim Regarding the Emails She Did Not Receive.* ........ 8

*2. The Complaint Fails to Establish that the Four Emails Sent to Plaintiff Had False or Misleading Deadlines.* ........ 9

*3. The Complaint Does Not Show Plaintiff Was a Washington Resident at the Time of Each Challenged Email.* ........ 10

*4. The Statute of Limitations Bars Claims About Emails Sent Before June 10, 2024.* ........ 12

*5. The Challenged Emails Lack the Specificity Required to be Capable of Being Actionably False* ........ 14

B. The Complaint's CPA Claim is Wholly Derivative of its CEMA Claim and Fails for the Same Reasons. ........ 18

V. CONCLUSION ........ 19



DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA 98104-7029 | Tel: 206.839.4800

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.H. Lundberg Associates, Inc. v. TSI, Inc.*, 2014 WL 5365514 (W.D. Wash. Oct. 21, 2014) ....16

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....11, 14

*Bell Atl. Corp. v. Twombly*, 550 U.S 544 (2007) ....11, 14

*Bose v. Linear Design Labs*, 467 F.2d 304 (2d Cir. 1972) ....15

*Brown v. Old Navy*, 567 P.3d 38 (2025) .... *passim*

*Brummett v. Washington's Lottery*, 171 Wn. App. 664 (2012) ....17

*Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047 (9th Cir. 2011) ....6

*Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68 (2d Cir. 2022) ....7

*In re Century Aluminum Sec. Litig.*, 729 F.3d (9th Cir. 2013) ....14

*Chen v. Sur La Table, Inc.*, 655 F. Supp. 3d 1082 (W.D. Wash. 2023) ....17, 18

*Cobbler Nevada, LLC v. Gonzales*, 901 F.3d 1142 (9th Cir. 2018) ....12

*Criminal Prods., Inc. v. Doe*, 2016 WL 6070355 (S.D. Cal. Oct. 17, 2016) ....12

*Elias v. Hewlett-Packard Co.*, 950 F. Supp. 2d 1123 (N.D. Cal. 2013) ....17

*Elliott v. Aaniih Nakoda Fin. LLC*, 2026 WL 1622917 (W.D. Wash. June 5, 2026) ....11



DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA 98104-7029 | Tel: 206.839.4800

*Erwin v. Seattle Times Co.*,
2026 WL 2323137 (King Cnty. Sup. Ct. Aug. 5, 2026) ....................9

*Gordon v. BAC Home Loans Servicing, LP*,
2011 WL 13228393 (E.D. Wash. Feb. 11, 2011) ....................13

*Gordon v. BAC Home Loans Servicing, LP*,
2011 WL 1565363 (E.D. Wash. Apr. 25, 2011) ....................13

*Gordon v. BAC Home Loans Servicing, LP*,
465 F. App'x 731 (9th Cir. 2012) ....................13

*Gordon v. Virtumundo, Inc.*,
2006 WL 3873368 (W.D. Wash. Dec. 8, 2006), *aff'd*, 575 F.3d 1040 (9th Cir. 2009) ....................6, 8, 13, 18

*Gutierrez v. Converse Inc.*,
2024 WL 2106952 (C.D. Cal. May 2, 2024) ....................12

*Haskell v. Time, Inc.*,
857 F. Supp. 1392, 1400 (E.D. Cal. 1994) ....................17

*Hoffman v. One Techs., LLC*,
2017 WL 176222 (W.D. Wash. Jan. 17, 2017) ....................8

*Ibrahim v. Dep't of Homeland Sec.*,
669 F.3d 983 (9th Cir. 2012) ....................11

*ISE Ent. Corp. v. Longarzo*,
2018 WL 1569803 (C.D. Cal. Feb. 2, 2018) ....................10

*Isomedia, Inc. v. Spectrum Direct, Inc.*,
2009 WL 10676391 (W.D. Wash. May 27, 2009) ....................8, 10

*Johansen v. EFinancial LLC*,
2021 WL 7161969 (W.D. Wash. June 11, 2021) ....................12

*Kempf v. Fullbeauty Brands Operations, LLC*,
2026 WL 395677 (W.D. Wash. Feb. 12, 2026) ....................11

*King v. Amazon.Com Servs. LLC*,
2026 U.S. WL 628261 (W.D. Wash. Mar. 6, 2026) ....................6

*Ledesma v. Hismile, Inc.*,
2026 WL 1146742 (N.D. Cal. Apr. 28, 2026) ....................14, 15, 16, 17

*Lierboe v. State Farm Mutual Auto. Ins. Co.*,
350 F.3d 1018 (9th Cir. 2003) ....................8



DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA 98104-7029 | Tel: 206.839.4800

*Macomb Cty. Emps. Ret. Sys. v. Align Tech., Inc.*,
39 F.4th 1092 (9th Cir. 2022) ....................................................................................18

*Maddux v. Philadelphia Life Ins. Co.*,
77 F.Supp.2d 1123 (S.D. Cal. 1999)..........................................................................10

*Meade v. Profusion Cosmetics Corp.*,
2026 WL 2098093 (W.D. Wash. July 16, 2026) ........................................................13, 14, 18

*Mallozzi v. Innovative Indus. Props.*,
2023 WL 6121499, at *11 (D.N.J. Sep. 19, 2023) .......................................................18

*Nemykina v. Old Navy, LLC*,
461 F. Supp. 3d 1054 (W.D. Wash. 2020)....................................................................6

*In re Nexus 6P Prods. Liab. Litig.*,
293 F. Supp. 3d 888 (N.D. Cal. 2018) .........................................................................15

*QuinStreet Inc. v. Ferguson*,
2009 WL 168112 (W.D. Wash. Jan. 23, 2009)..............................................................6, 8, 10

*Retail Wholesale v. Hewlett-Packard*,
845 F.3d 1268 (9th Cir. 2017) .....................................................................................14

*Sauk-Suiattle Indian Tribe v. City of Seattle*,
25 Wn. App. 2d 741, 749 (2023) .................................................................................7, 14

*Shayler v. 1310 PCH, LLC*,
51 F.4th 1015 (9th Cir. 2022) ......................................................................................7

*Southland Sod Farms v. Stover Seed Co.*,
108 F.3d 1134 (9th Cir. 1997) .....................................................................................16

*Sperling v. DSW*,
699 Fed. Appx. 654 (9th Cir. 2017)..............................................................................9

*Tempest v. Safeway, Inc.*,
2025 WL 3171581 (N.D. Cal. Nov. 13, 2025) ...............................................................8

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) .....................................................................................6

*Vitamin Energy, Inc. v. Bhargava*,
2025 WL 2506104 (E.D. Mich. Aug. 29, 2025).............................................................17

*Water & Sanitation Health, Inc. v. Rainforest All., Inc.*,
2015 WL 12657110 (W.D. Wash. Dec. 29, 2015) ..........................................................6



DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA 98104-7029 | Tel: 206.839.4800

**Statutes**

Commercial Electronic Mail Act, RCW ch. 19.190 ....................1, 13

Consumer Protection Act, RCW ch. 19.86 ....................3, 13

RCW 4.16.130 ....................7, 12, 13

RCW 19.190.020 ....................9, 11, 17

RCW 19.190.040 ....................8, 14

RCW 19.190.090 ....................8



DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA 98104-7029 | Tel: 206.839.4800

## I. INTRODUCTION

This case is not about deceptive email marketing. It is about an effort to convert ordinary promotional subject lines into a statutory damages claim under a statute that regulates only false or misleading statements appearing in an email's subject line. Plaintiff's theory asks the Court to expand Washington's Commercial Electronic Mail Act ("CEMA"), RCW ch. 19.190, far beyond its text and purpose.

NeoStrata Company, Inc. ("NeoStrata") is a longstanding skincare company that communicates lawful promotional offers to customers who have chosen to receive information about its products.[1] The email subject lines challenged here are routine marketing messages announcing discounts, promotions, and limited-time offers, none of which support the sweeping liability theory advanced in the Complaint.

Indeed, this action is one of more than 100 substantially similar lawsuits filed by Plaintiff's counsel in recent months seeking statutory damages based on isolated phrases appearing in marketing email subject lines. But regardless of how many times the theory is repeated, the Complaint fails because Plaintiff has not alleged facts showing that NeoStrata violated CEMA as to her or anyone else.

The defects begin with statutory standing. Of the 64 emails identified in the Complaint, Plaintiff alleges that only four were sent to her. She therefore cannot state a claim based on the remaining 60 emails (and she admits that 24 of those were true, challenging just 40 of the 64). Plaintiff does not allege that NeoStrata extended the deadlines contained in any of the four emails she actually received. To the contrary, because Plaintiff does not allege that she received any subsequent email extending those promotions, the Complaint contains no facts suggesting that the original promotional deadlines communicated to her were false when made.

The Complaint fares no better as to the emails Plaintiff did not receive. Plaintiff does not identify a single recipient of those emails, let alone allege facts showing that any recipient later

---

[1] NeoStrata was improperly named as NeoStrata Company, Inc. d/b/a Neostrata and Exuviance.



DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA 98104-7029 | Tel: 206.839.4800

received an email extending the deadline allegedly announced in an earlier message. Without such allegations, Plaintiff cannot plausibly claim that any challenged subject line was false or misleading. Plaintiff also fails to allege facts showing that NeoStrata knew or had reason to know that she was a Washington resident when each email was sent, a required element of a CEMA claim.

Beyond these threshold defects, Plaintiff's claims fail for additional reasons unique to the challenged emails themselves. Many claims are barred by the applicable statute of limitations. Many of the challenged subject lines contain no representation about time or duration at all. Others use commonplace promotional phrases such as "*Last Chance*" or "*Last Call*," which courts have recognized as non-actionable puffery. And because CEMA focuses exclusively on statements made "in the subject line alone," Plaintiff cannot rely on extrinsic information to transform otherwise lawful subject lines into actionable misrepresentations. *Brown v. Old Navy*, 567 P.3d 38, 44 (2025).

Because Plaintiff's counsel have rushed to file yet another in a long line of hundreds of pending cases, the Complaint recycles the same legal conclusions and lacks the requisite facts to support its claims. Since Plaintiff has not plausibly alleged that any NeoStrata subject line was false or misleading within the meaning of CEMA, her claims should be dismissed with prejudice.

## II. STATEMENT OF FACTS

Stripped of its rhetoric, the Complaint advances a simple theory: NeoStrata allegedly violated CEMA because it sent four truthful and accurate promotional emails to Plaintiff; and then later sent different promotional emails to other, unnamed consumers offering discounts after earlier promotions had expired. From that premise, Plaintiff concludes that NeoStrata engaged in a years-long "scheme" to deceive consumers through false deadlines. Compl. ¶¶ 39-44. But labels such as "scheme," "strategy," and "deceptive" do not substitute for factual allegations, nor can they mask the dearth of any wrongful conduct by NeoStrata. The Complaint identifies no facts plausibly showing that any challenged subject line was false when it was sent. Instead, Plaintiff asks the Court to ***infer*** falsity solely from the existence of later promotional emails, which is a step too far.

Out of the 64 emails identified in the Complaint, Plaintiff challenges 40 subject lines that she claims violated CEMA and, therefore, also the Consumer Protection Act, RCW ch. 19.86. Compl. ¶¶ 47-131. Yet Plaintiff does not allege facts showing that any of those subject lines was false on its face. Rather, her claims depend entirely on 24 different emails that allegedly announced later promotions or extensions. In Plaintiff's view, those later emails retroactively transformed the earlier subject lines into actionable misrepresentations. CEMA, however, does not permit liability based on such speculation, particularly where Plaintiff fails to allege facts showing that the challenged statements were false when made or that she herself even received them.

To make sense of Plaintiff's vague allegations, the attached Declaration of David Freeburg ("Freeburg Declaration") sets forth a chart identifying the emails at issue, whether Plaintiff claims they were false, and the various reasons for dismissal. Freeburg Decl. ¶ 3. As referenced above, only 4 of the subject 64 emails were sent to Plaintiff herself:

- ***First***, Plaintiff alleges she received a false subject line from NeoStrata on November 11, 2022, stating: "Last Chance for 40% OFF Sitewide!" *Id.* ¶ 49. Plaintiff alleges that subject line was false and misleading, but not because there was no sale, or that she was denied the discount, or even that she attempted to benefit from it. Instead, she infers falsity from another email sent one day later with the subject: "Just Your Luck! Another Day to Shop the 11/11 Sale." *Id.* ¶ 50. But Plaintiff does not allege to have received the second email or that the offer in the November 11 email sent to her was extended as to her.
- ***Second***, Plaintiff alleges she received a false subject line from NeoStrata on July 4, 2023, stating: "50% OFF SETS. TODAY ONLY!" *Id.* ¶ 62, 143. Plaintiff claims this subject line was false or misleading because NeoStrata sent unidentified third-parties another email on July 5, 2023 email with the subject: "Extended! Power Up With 50% Off Sets." *Id.* ¶ 63. Again, however, Plaintiff did not allege that she received the later email, or explain how it made her own deadline false and misleading.
- ***Third*** and ***Fourth***, Plaintiff alleges she received two false subject lines from NeoStrata on April 19 (with the subject: "48 Hours Only: Buy One, Get One Free") and April 20, 2026



DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA 98104-7029 | Tel: 206.839.4800

(with the subject: "Our Offer Ends Tonight"). *Id*. ¶¶ 127-128 & 144-145. Plaintiff claims these subject lines were both false and misleading because NeoStrata sent another email on April 21, 2026 with the subject: "LAST CHANCE!" *Id*. ¶ 129. But Plaintiff does not allege NeoStrata sent the 'Last Chance' email to ***her***, or that it altered any of her own deadlines.

In addition to the four emails sent to Plaintiff, the Complaint challenges 36 more emails that NeoStrata sent to other consumers—but not Plaintiff—across a broad range of dates between November 11, 2022, and April 21, 2026. Compl. ¶¶ 48-129 & 142-145. Those emails follow the same pattern explained above, with Plaintiff alleging that subsequent emails supposedly made the earlier subjects false and misleading. Tellingly, the Complaint does not allege that any of the 36 other challenged emails were sent to Plaintiff, does not claim Plaintiff received any of the extensions, and does not identify who, if anyone, did. In fact, Plaintiff does not allege that any of these other emails were even sent to the same people—which makes sense, because she only knows they were not sent to her. Thus, she does not allege ***anyone*** received both an allegedly fake deadline and an extension.

Setting aside these fatal defects, the challenged emails share many patterns establishing they are not actionably false and misleading. For example:

- Plaintiff challenges six subject lines because they used the phrase "*Final Hours*," arguing this created a false deadline that NeoStrata extended. *Id*. ¶¶ 49, 95, 99, 101, 110 & 114. As one such example, Plaintiff claims a November 11, 2025 email with the subject "FINAL HOURS FOR 40% OFF SITEWIDE" created a false deadline. But none of the original subject lines were actionably false or misleading, because they did not say ***how many hours*** were remaining before the end of the sale.
- Plaintiff challenges 11 subject lines because they used the phrases "*Last Chance*" or "*Last Call*." *Id*. ¶¶ 49, 54, 66, 70, 74, 78, 91, 95, 102, 105 & 121.[2] For example, Plaintiff alleges

[2] The Complaint alleges another email using the phrase "*last call*," sent on April 21, 2026, contradicted earlier emails but was not itself false. *Id*. ¶ 129.


DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA 98104-7029 | Tel: 206.839.4800

a September 7, 2025 subject "Last Chance! 40% Off Any 3+ Items" created another false deadline. But these subject lines were not actionable because a "*last chance*" or "*last call*" does not preclude the sale from ending the next day, regardless of any subsequent email.

- Plaintiff also challenges six subject lines that do not include any measurable statements about time at all. Plaintiff challenges a pair of December 15, 2022 subjects stating: "One Final Thrill: Buy One, Get One FREE" and "Going, Going, BOGO Sale is Almost Gone," *id.* ¶¶ 58-59, a November 27, 2023 subject stating: "Selling Fast! 60% Off All Sets," *id.* ¶ 67, a February 28, 2024 subject stating: "40% Off Any 3+ Items," *id.* ¶ 73, a March 2, 2025 subject stating: "Flash Sale! 25% Off Award-Winners," *id.* ¶ 77, and an August 5, 2025 subject stating: "Get Glowing: 50% Off AHA Classics." *Id.* ¶ 90. But these subject lines could not possibly have been false or misleading, because none of them said anything at all about the end of a sale.

The Complaint also fails to plausibly allege the territorial element required by CEMA. CEMA applies only where the sender knew, or had reason to know, that the recipient was a Washington resident. Yet Plaintiff does not allege facts showing that NeoStrata knew or had reason to know that she resided in Washington when any challenged email was sent. Indeed, the Complaint does not even allege that Plaintiff ***was*** a Washington resident at the time she received any of the four emails. Instead, Plaintiff relies on the conclusory premise that NeoStrata generally marketed to consumers nationwide and may have possessed information from which her location could have been determined. Compl. at ¶ 133. But CEMA requires allegations that the sender knew or had reason to know the recipient was a Washington resident, not speculation that the sender might have been able to figure it out.[3] Because the Complaint pleads no facts satisfying that statutory requirement, her CEMA claim fails as a matter of law.

[3] For example, the Complaint does not allege that Plaintiff purchased any products from NeoStrata or that the company actually knew her address.



DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA 98104-7029 | Tel: 206.839.4800

## III. LEGAL STANDARD

The Complaint alleges a uniform "scheme" of deliberate misrepresentations sounding in fraud. Compl. ¶ 39. Specifically, Plaintiff alleges NeoStrata titles emails with "urgent" subject lines as part of a deliberate "strategy" to "hook" consumers on promotions and then "knowingly" extend them. *Id.* ¶ 42-44. These allegations, premised upon a "unified course of fraudulent conduct" are required, yet fail, to satisfy Rule 9(b)'s heightened pleading standard. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003); *Water & Sanitation Health, Inc. v. Rainforest All., Inc.*, 2015 WL 12657110, at *3 (W.D. Wash. Dec. 29, 2015) (dismissing CPA claim for failure to comply with Rule 9(b)); *Nemykina v. Old Navy, LLC*, 461 F. Supp. 3d 1054, 1058 (W.D. Wash. 2020) (applying Rule 9(b) to an "overarching fraudulent scheme" of false advertising "that Defendants employed as part of a 'marketing plan'"); *see also Gordon v. Virtumundo, Inc.*, 2006 WL 3873368, at *3 (W.D. Wash. Dec. 8, 2006) (applying Rule 9(b) to CEMA), *aff'd*, 575 F.3d 1040 (9th Cir. 2009); *King v. Amazon.Com Servs. LLC*, 2026 U.S. WL 628261, at *3 (W.D. Wash. Mar. 6, 2026) (applying Rule 9(b) to CPA claims "that Amazon 'deliberately,' 'knowing[ly],' and 'purposely' engaged in unfair or deceptive conduct.").

Specifically, the Complaint fails to explain not just "what is false or misleading about the purportedly fraudulent statement, [but] ***why it is false***." *Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (emphasis added); *see also QuinStreet, Inc. v. Ferguson*, 2009 WL 168112, at *13 (W.D. Wash. Jan. 23, 2009) (finding Rule 9(b) required plaintiff to explain how emails "are attributable to *QuinStreet*, and why they violate CEMA and CPA."). As set forth below, Plaintiff does not, and cannot, meet that standard here.

## IV. ARGUMENT

Plaintiff's Complaint is nothing more than a recitation of the CEMA framework and a list of emails Plaintiff was able to locate on a broad internet search (of which only about 6% were actually sent to her).[4] This hundredth "carbon-copy complaint[]" filed by Plaintiff's counsel

---

[4] Since only a fraction of the relevant emails were sent to Plaintiff, it appears that her counsel found the remainder in an online database providing examples of advertising emails for use by creative professionals—like lawyers attempting to manufacture CEMA claims. Freeburg Decl. ¶ 2. But that



DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA 98104-7029 | Tel: 206.839.4800

"use[s] identical language to state the same conclusory allegations" and fails to articulate cognizable claims for a variety of reasons, any one of which is sufficient to warrant dismissal. *Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68, 77 (2d Cir. 2022); *see also Shayler v. 1310 PCH, LLC*, 51 F.4th 1015, 1018 (9th Cir. 2022) ("[T]he use of form complaints containing a multitude of boilerplate allegations" is "[a] hallmark of abusive … litigation").

Namely, the Complaint recites a litany of marketing communications on the assumption that their falsity is self-evident when the reality is exactly the opposite. Many of the challenged subjects say nothing about a deadline at all, and "subjective, unverifiable claims about a product or service are 'mere puffery' [that] cannot give rise to a false advertising claim." *Sauk-Suiattle Indian Tribe v. City of Seattle*, 25 Wn. App. 2d 741, 749 (2023). Plaintiff also admits that she did not receive any of the so-called extension emails, which means that any of her own deadlines were ***true***.

Additional, independent grounds for dismissal are also evident from Plaintiff's rush to file another cookie-cutter pleading. The two-year statute of limitations in RCW 4.16.130 bars Plaintiff's claims regarding nearly a third of the emails in her Complaint. And Plaintiff even fails to clear CEMA's most basic pleading requirement – that NeoStrata knew she was a Washington resident, or even that she was a Washington resident – when it sent the challenged emails.

In short, the Complaint's identification of routine marketing messages (and nothing more) fails to establish their falsity and lacks even the most basic allegations to articulate a claim under CEMA. As such, Plaintiff's sweeping theory of liability must be rejected and her claims dismissed.

---

database reports nothing about whether these advertisements were sent to any particular customer or to any particular geographic region.

### A. Plaintiff Does Not State a Valid CEMA Claim Regarding Each of the Challenged Emails.

#### *1. Plaintiff Cannot State a CEMA Claim Regarding the Emails She Did Not Receive.*

Despite the Complaint's wide-reaching claims, Plaintiff alleges that she only received four of the now 40 challenged emails. Compl. ¶ 141-45.[5] Yet damages are only available "***to the recipient*** of a commercial electronic mail message … sent in violation of this chapter …" RCW 19.190.040(1) (emphasis added); *see also* RCW 19.190.090 (only "[a] person ***who is injured*** under this chapter may bring a civil action in the superior court ...") (emphasis added). CEMA precludes plaintiffs from recovering for emails they did not receive, because according to *Brown*, "the injury is receiving the e-mail…." 567 P.3d at 45. This is consistent with Rule 9(b), which requires plaintiffs to "identify which e-mails violate [CEMA] and how they run afoul of the provision." *Gordon*, 2006 WL 3873368, at *2–4; *see also Tempest v. Safeway, Inc.*, 2025 WL 3171581, at *5 (N.D. Cal. Nov. 13, 2025) (dismissing claims without "factual allegations as to what representation(s) Plaintiffs themselves saw, relied on, and were misled by."). Indeed, even "in class actions, the named representatives must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Lierboe v. State Farm Mutual Auto. Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2003) (citation omitted) (dismissing claims by a plaintiff without the injury asserted on behalf of the putative class). Because Plaintiff did not, herself, receive 36 of the challenged emails, her claims premised on these emails must be dismissed. *Hoffman v. One Techs., LLC*, 2017 WL 176222, at *2 (W.D. Wash. Jan. 17, 2017); *see also QuinStreet*, 2009 WL 168112, at *5 (agreeing plaintiff must "identif[y] which 'emails he allegedly received" and "how they are attributable to QuinStreet.'"); *Isomedia, Inc. v. Spectrum Direct, Inc.*, 2009 WL 10676391, at *2

[5] The four emails are: (1) the email described at ¶ 49 sent on November 11, 2022 with the subject line: "Last Chance for 40% OFF Sitewide!"; (2) the email described at ¶ 62 sent on July 4, 2023, with the subject line: "50% OFF SETS. TODAY ONLY!"; (3) the email described at ¶ 127 sent on April 19, 2026, with the subject line: "48 Hours Only: Buy One, Get One Free"; and (4) the email described at ¶ 128 sent on April 20, 2026, with the subject line: "Our Offer Ends Tonight."

(W.D. Wash. May 27, 2009) (recognizing plaintiffs must identify who "allegedly received the emails at issue"). Thus, Plaintiff's claims about the 36 challenged emails sent to ***other*** people should be dismissed.

2. *The Complaint Fails to Establish that the Four Emails Sent to Plaintiff Had False or Misleading Deadlines.*

As to the four emails Plaintiff actually received, the Complaint does not show that any of the deadlines were actually false, let alone with the specificity required by Rule 9(b). The Complaint's theory of falsity alleges that "extension" emails made the subject of earlier emails false or misleading. But because Plaintiff did not receive both of the relevant emails, she cannot demonstrate that the subject lines provided "false or misleading information" to ***her***, as required to violate RCW 19.190.020. *See Sperling v. DSW*, 699 Fed. Appx. 654, 655 (9th Cir. 2017) (dismissing theory about illusory discounts, since the plaintiff failed to "allege sufficient facts to show with particularity how [and] why" reference prices were misleading); *Erwin v. Seattle Times Co*., 2026 WL 2323137, at *1 (King Cnty. Sup. Ct. Aug. 5, 2026) (granting motion to dismiss CEMA claim because its "theory of deception based on 'extended sales' is not cognizable").

Plaintiff's own experience illustrates why this requires dismissal. According to Plaintiff, she received a November 11, 2022 email with the subject: "Last Chance for 40% OFF Sitewide," but ***not*** the November 12, 2022 email stating: "Just Your Luck! Another Day to Shop the 11/11 Sale." Compl. ¶¶ 49-59 & 142. Likewise, the Complaint alleges that Plaintiff received a July 4, 2023 subject stating: "50% OFF SETS. TODAY ONLY," but ***not*** the July 5, 2023 email stating: "Extended! Power Up With 50% Off Sets." Compl. ¶¶ 62-63, 143. The Complaint alleges that Plaintiff received the April 19, 2026 email with the subject: "48 Hours Only: Buy One, Get One Free" and the April 20, 2026 subject stating: "Our Offer Ends Tonight," but ***not*** the April 21, 2026 email supposedly extending that sale, stating: "LAST CHANCE!" Compl. ¶¶ 127-129 & 144-145. The Complaint alleges that ***someone else*** received the later emails—but not Plaintiff. Because NeoStrata never offered any extensions to Plaintiff, the statements about ***her own*** deadlines were undoubtedly true as to her. In other words, Plaintiff's own "Last Chance" was never extended. In

fact, the Complaint does not allege that ***anyone*** received both the emails sent to Plaintiff and the subsequent emails supposedly contradicting the subject lines of those emails. Thus, the Complaint lacks facts showing that anyone received a false statement as to the emails sent to Plaintiff.

This reflects reality: companies routinely send different advertisements to different consumers, based on their preferences and patterns—such as whether consumers shop often, enroll in a loyalty plan, or leave items in their cart without placing an order. Offering different discounts to different customers is perfectly legal, and far older than the internet. For example, only customers who take the time to cut newspaper coupons or hunt for discount codes can obtain those discounts, and it is well-established that "[a] plaintiff may not generally maintain an action for fraud unless plaintiff was the person to whom the alleged misrepresentations were directed." *Maddux v. Philadelphia Life Ins. Co.*, 77 F.Supp.2d 1123, 1132 (S.D. Cal. 1999); *ISE Ent. Corp. v. Longarzo*, 2018 WL 1569803, at *9 (C.D. Cal. Feb. 2, 2018) ("[T]he misrepresentation must be made to the plaintiff (rather than some third party)."). That is precisely why CEMA requires plaintiffs to identify who "allegedly received the emails at issue," particularly under Rule 9(b). *Isomedia*, 2009 WL 10676391, at *2; *see also QuinStreet*, 2009 WL 168112, at *5.

Plaintiff's experience confirms that her theory of falsity fails to state a claim regarding ***any*** of the challenged emails. The Complaint does not allege ***which*** consumers received any of the 40 challenged emails, or whether they were the ***same*** consumers who received the 24 so-called extensions, as needed for the earlier subjects to be false. While the Complaint references the volume of emails sent by NeoStrata, it does not—and could not, truthfully—allege that they all went to the same people. Compl. ¶ 133. Because the Complaint does not allege Plaintiff received any of the so-called extensions or identify ***who did***, it does not show any subject lines were false and misleading.

*3. The Complaint Does Not Show Plaintiff Was a Washington Resident at the Time of Each Challenged Email.*

The Complaint also fails to state a claim under CEMA because it does not allege that NeoStrata knew Plaintiff was a Washington resident—or even that she ***was*** a Washington



DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA 98104-7029 | Tel: 206.839.4800

resident—at the time of each challenged email. CEMA is strictly limited to the delivery of a false or misleading subject line "to an electronic mail address that the sender knows, or has reason to know, is held by a Washington resident." RCW 19.190.020(1). The Complaint fails to satisfy either prerequisite.

Instead, it alleges that, as of the date it was filed on June 10, 2026, "Plaintiff Tiffany Sheffield ***is*** a resident of Pierce County, Washington." Compl. ¶ 10 (emphasis added). However, it alleges nothing about where Plaintiff was living when NeoStrata sent the relevant emails. CEMA does not allow ***new*** residents to assert claims about emails they received before moving to Washington, regardless of where they live when filing suit. RCW 19.190.020(1). Under *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007), Plaintiff must allege every element of a claim to survive a motion to dismiss. She does not.

Plaintiff speculates NeoStrata "may obtain location information" without alleging facts to show NeoStrata actually knew any information about her. Compl. ¶ 134. Instead, Plaintiff offers an array of allegations about what NeoStrata ***might*** or ***could*** have done – and nothing that it actually did. Courts have repeatedly recognized that speculation about what a defendant ***might*** do is insufficient for a plausible claim. *Elliott v. Aaniih Nakoda Fin. LLC*, 2026 WL 1622917, at *2 (W.D. Wash. June 5, 2026) (dismissing CEMA claim because it failed to "identify any information about how each Defendant had knowledge or reason to know they were sending communications to a Washington resident's email address."); *Kempf v. Fullbeauty Brands Operations, LLC*, 2026 WL 395677, at *7 (W.D. Wash. Feb. 12, 2026) ("If [Plaintiff] had not pleaded the Washington residency or knowledge thereof required for liability under CEMA, then the appropriate relief would be dismissal of her claim."); *see also Ibrahim v. Dep't of Homeland Sec.*, 669 F.3d 983, 992 (9th Cir. 2012) (stating that a complaint must allege "more than a sheer possibility that a defendant has acted unlawfully.").

For instance, Plaintiff quotes statutory language suggesting that NeoStrata ***might*** have reason to know her residence ***if*** it is available from Google; without any indication that Google will disclose her residence (it will not). *See* Compl. ¶ 138 (quoting RCW 19.190.020(2)). Plaintiff



DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA 98104-7029 | Tel: 206.839.4800

speculates NeoStrata ***might*** obtain location information from customer purchases, but does not allege any purchase of her own, or what information she provided to NeoStrata. *Id.* ¶ 134. Plaintiff also contends that NeoStrata should have known some recipients—but not her—are Washington residents, because of the "sheer volume of email marketing that NeoStrata engages in." Compl. ¶ 133.

Plaintiff also asserts that NeoStrata ***could*** obtain location information by tracking IP addresses (*id.* ¶¶ 135-37), but there is no indication that NeoStrata actually did so or learned anything about Plaintiff herself. And regardless of whether website hosts can identify IP addresses, that is still insufficient to identify a person's residence. *See Gutierrez v. Converse Inc.*, 2024 WL 2106952, at *17 (C.D. Cal. May 2, 2024) ("The fact that Defendant may have access to chat users' IP addresses and certain chat users' shipping addresses does not mean that they are in a position to make a determination as to where the chat users were located when they used the chat feature."); *see also Cobbler Nevada, LLC v. Gonzales*, 901 F.3d 1142, 1145 (9th Cir. 2018) ("Because multiple devices and individuals may be able to connect via an IP address, simply identifying the IP subscriber solves only part of the puzzle."); *Johansen v. EFinancial LLC*, 2021 WL 7161969, at *8 (W.D. Wash. June 11, 2021) ("It is, however, recognized that IP addresses can be unreliable indicators of physical location."); *see also Criminal Prods., Inc. v. Doe*, 2016 WL 6070355, at *2 (S.D. Cal. Oct. 17, 2016) ("In the context of dynamic IP addresses, a person using [an IP] address one month may not have been the same person using it the next.") (quotations omitted).

Plaintiff's speculation about NeoStrata's knowledge of her Washington residency only underscores the lack of any actual facts supporting this conclusion. Because the Complaint does not allege that Plaintiff was a Washington resident at the time, or whether NeoStrata actually knew that fact, it fails to state a claim.

#### *4. The Statute of Limitations Bars Claims About Emails Sent Before June 10, 2024.*

Plaintiff's claims regarding every email sent before June 10, 2024—12 of the 40 challenged emails, including two of the only four sent to Plaintiff—are barred by the two-year statute of



DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA 98104-7029 | Tel: 206.839.4800

limitations in RCW 4.16.130. CEMA does not include a statute of limitations within its own text, RCW ch. 19.86, and its claims do not fall within any of the specific statutes of limitations within RCW ch. 4.16. CEMA claims are therefore subject to the catch-all provision in RCW 4.16.130, which states: "An action for relief not hereinbefore provided for, shall be commenced within ***two years*** after the cause of action shall have accrued." RCW 4.16.130 (emphasis added).

Numerous courts have confirmed that RCW 4.16.130 governs CEMA claims. *Gordon v. BAC Home Loans Servicing, LP*, 2011 WL 13228393, at *1 (E.D. Wash. Feb. 11, 2011) ("*Gordon I*") (recognizing that because "CEMA does not contain a statute of limitations" of its own, CEMA claims are subject to the "two year 'catch-all' statute of limitations provided for in RCW 4.16.130."); *see also Gordon v. BAC Home Loans Servicing, LP*, 2011 WL 1565363, at *2 (E.D. Wash. Apr. 25, 2011) ("*Gordon II*") (criticizing the plaintiff's "frivolous" attempt to assert CEMA claims about emails he received more than two years before filing suit); *Gordon v. BAC Home Loans Servicing, LP*, 465 F. App'x 731 (9th Cir. 2012) ("*Gordon III*") (affirming that a "claim under the Washington Commercial Electronic Mail Act" is subject to "the two-year catchall limitations period" in RCW 4.16.130). This Court recently reached the same conclusion in *Meade v. Profusion Cosmetics Corp.*, stating that "[a]lthough the Court is not bound by the Ninth Circuit's [unpublished] decision in *Gordon*, it chooses to follow it." *Meade*, 2026 WL 2098093, at *2 (W.D. Wash. July 16, 2026) (dismissing CEMA claims regarding emails sent more than two years before the complaint).

*Meade* and the *Gordon* trilogy recognize that when CPA claims are based on CEMA, they are also subject to the same two-year statute of limitations. As explained in *Gordon I*, when a "[c]omplaint does not allege a CPA claim which is independent of [its] CEMA claim … the CPA claim is also time-barred." 2011 WL 13228393, at *2; *see also Gordon III*, 465 F. App'x at 732 (CPA claims derived from CEMA lack "the essential damage element of a claim under the Washington Consumer Protection Act" and so any derivative claim is equally time barred after



DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA 98104-7029 | Tel: 206.839.4800

two years); *Meade*, 2026 WL 2098093, at *2 (same).[6] Here, Plaintiff's CPA theory is wholly derivative of her CEMA claim. As a result, Plaintiff's CEMA and CPA claims are both subject to a two-year statute of limitations, and she cannot recover regarding the 12 challenged emails sent before June 10, 2024.

#### 5. *The Challenged Emails Lack the Specificity Required to be Capable of Being Actionably False*

Plaintiff does not show that the challenged emails made actionably false or misleading statements in the subject line, as required for claims under CEMA. "[S]ubjective, unverifiable claims about a product or service are 'mere puffery' and cannot give rise to a false advertising claim." *Sauk-Suiattle Indian Tribe*, 25 Wn.App.2d at 749. Thus, to be actionably false, a statement must be "capable of objective verification." *Retail Wholesale v. Hewlett-Packard*, 845 F.3d 1268, 1275 (9th Cir. 2017). When discussing speed or time, an actionable misstatement must be "binary and precise," rather than subjective like the phrases fast or soon. *Ledesma v. Hismile, Inc*., 2026 WL 1146742, at *7 (N.D. Cal. Apr. 28, 2026) (granting motion to dismiss subjective statements about time).

Moreover, a statement is not actionable unless every reasonable interpretation of the words is objectively false. "When faced with two possible explanations, only one of which can be true and only one of which results in liability, plaintiffs cannot offer allegations that are 'merely consistent with' their favored explanation but are also consistent with the alternative explanation." *In re Century Aluminum Sec. Litig*., 729 F.3d at 1108 (9th Cir. 2013). "Something more is needed, such as facts tending to exclude the possibility that the alternative explanation is true, in order to render plaintiffs' allegations plausible within the meaning of *Iqbal* and *Twombly*." *Id.* (citations omitted). Here, many of the challenged subject lines are generalized expressions of promotional puffery or vague and subjective statements that cannot constitute false and misleading statements

---

[6] That provision states: "Damages to the recipient of a commercial electronic mail message … sent in violation of this chapter are five hundred dollars, or actual damages, whichever is greater." RCW 19.190.040(1).

as a matter of law. *Brown*, 567 P.3d at 47 ("We hold that instances of mere puffery are not prohibited by subsection (1)(b)."). Thus, Plaintiff's challenges to these subject lines should be dismissed.

*i. Subjects Using the Phrase "Final Hours" are Vague and Inactionable Puffery Because they Do Not State How Many Hours Are Remaining.*

Plaintiff challenges six subject lines using the phrase "*Final Hours*" because NeoStrata supposedly extended these sales. For example, Plaintiff argues a November 11, 2025 email with the subject: "FINAL HOURS FOR 40% OFF SITEWIDE" and a February 26, 2026 email with the subject: "Final Hours: 40% Off 3+ Items!" were false. *Id.* ¶¶ 113-15.[7] Yet these emails did not represent anything about ***how many*** hours remained.

The Court found that similarly vague statements about "instant" results for a teeth-whitening product were protected puffery in *Ledesma*, 2026 WL 1146742, at *7. It explained:

> Plaintiffs' reliance on the fact that some advertisements show whitening happening within different time frames is far from a 'binary and precise' description Plaintiffs rely upon; is whitening considered 'instant' if it happens within three seconds or fifteen seconds? What if it occurred within twenty seconds or a minute? At what point in time would 'instant' no longer be an accurate description?

*Id*. Similarly, the phrase "*Final Hours*" is protected puffery, because it says nothing about when a promotion will actually end. *See also Bose v. Linear Design Labs*, 467 F.2d 304, 310-11 (2d Cir. 1972) (finding a statement about "countless hours of research" to "consist largely of 'puffing'"); *In re Nexus 6P Prods. Liab. Litig.*, 293 F. Supp. 3d 888, 937 (N.D. Cal. 2018) ("[T]he references to 'into the night' and 'all day and into the night' are inexact and do not provide a baseline against which to measure the rest of the statement."). Because "*Final Hours*" does not provide any objective standard about the end of sale, the emails using this phrase are protected puffery, rather than the kind of objective misstatement required for a CEMA claim.

[7] *See also id.* ¶ 49 ("FINAL HOURS For 40% Off!"); ¶ 95 ("Final Hours for 40% Off"); ¶ 99 ("Final Hours for BOGO!"); ¶ 110 ("Final Hours! Shop The Anniversary Sale").



DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA 98104-7029 | Tel: 206.839.4800

*ii. Subject Lines Using the Phrases "Last Chance" and "Last Call" are Vague and Inactionable Puffery.*

The Complaint challenges eleven subject lines because they use the phrases "*Last Chance*" or "*Last Call*," which are also vague and protected puffery. For example, Plaintiff alleges a September 7, 2025 subject stating: "Last Chance! 40% Off Any 3+ Items" and a November 27, 2023 subject line stating "LAST CALL: 60% Off! Shop our Exclusive Cyber Monday Set!" were both false. Compl. ¶¶ 66-68.[8] But simply stating "*Last Chance*" or "*Last Call*" does not identify when a promotion will end. Without a deadline, these statements provide no objective way to measure the end of a "*Last Chance*" or "*Last Call*," so they are subjective puffery.

In the words of *Ledesma*, "[a]t what point in time would" *Last Call* or *Last Chance* "no longer be an accurate description?" 2026 WL 1146742, at *7 (holding statements about time are puffery without an objective standard); *A.H. Lundberg Associates, Inc. v. TSI, Inc.*, 2014 WL 5365514, at *6 (W.D. Wash. Oct. 21, 2014) (explaining statements without a "specific reference to a quantifiable or measurable feature or function" are puffery). As such, these phrases are both the kind of "exaggerated advertising, blustering, and boasting upon which no reasonable buyer would rely." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145 (9th Cir. 1997). And CEMA's "subject line alone" rule prevents the Court from making assumptions about words that NeoStrata did not actually say. *Brown*, 567 P.3d at 47. Since neither phrase specifies when a promotion will end, they are not actionably false.

*iii. Many of the Challenged Subjects Saying Nothing About a Deadline at All.*

Finally, Plaintiff's theory fails to identify anything actionably false in six challenged subjects that say nothing about deadlines at all. The Complaint challenges a pair of December 15, 2022 subjects stating: "One Final Thrill: Buy One, Get One FREE" and "Going, Going, BOGO

[8] *See also* Compl. ¶¶ 49 ("Last Chance for 40% OFF Sitewide!"); ¶ 54 ("LAST CALL: 40% Off Sitewide Is Almost Over"); ¶ 70 ("LAST CALL! 4 Days of Festivities Ends Tonight!"), ¶ 74 ("Last Chance! 40% Off Any 3+ Items"); ¶ 78 ("Last Call! 25% Off Award-Winners"); ¶ 91 ("Last Call! 50% Off AHA Classics"); ¶ 102 ("Last Call! 40% Off Sitewide Ends Soon"); ¶ 105 ("Cyber Monday Last Chance: 60% Off Blockbuster Set"); ¶ 121 ("Last Chance! FREE SkinRise Morning Glow Pads"); ¶ 129 ("LAST CHANCE!").



DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA 98104-7029 | Tel: 206.839.4800

Sale is Almost Gone," Compl. ¶¶ 58-59; a November 27, 2023 subject stating: "Selling Fast! 60% Off All Sets," *id.* ¶ 67; a February 28, 2024 subject stating: "40% Off Any 3+ Items," *id.* ¶ 73; a March 2, 2025 subject stating: "Flash Sale! 25% Off Award-Winners," *id.* ¶ 77; and an August 5, 2025 email subject stating: "Get Glowing: 50% Off AHA Classics," *id.* ¶ 90. But none of these said anything about an impending deadline, as required for Plaintiff's theory of falsity.

For example, the subject: "40% Off Any 3+ Items" says nothing about time, so Plaintiff's claims regarding that subject should be dismissed out of hand. Plaintiff argues that the body of this February 28, 2024 email—not the subject—said "4 Days of Deals ENDS TONIGHT." Compl. ¶ 73. But CEMA only allows claims about "false or misleading information in the subject line" of an email. RCW 19.190.020(1)(b). Thus, Plaintiff cannot use extrinsic evidence outside "the subject line alone" to rewrite what NeoStrata actually said. *Brown*, 567 P.3d at 44; *Chen v. Sur La Table, Inc.*, 655 F. Supp. 3d 1082, 1092 (W.D. Wash. 2023) ("CEMA does not prohibit false and misleading information … as to every line of the email."); *Elias v. Hewlett-Packard Co.*, 950 F. Supp. 2d 1123, 1134 (N.D. Cal. 2013) ("[T]he combination of several 'puff' statements does not automatically create an actionable misrepresentation.").

The other subjects, at most, are protected puffery like the kind of "'don't delay' exhortation that consumers hear and ignore daily." *Haskell v. Time, Inc.*, 857 F. Supp. 1392, 1400 (E.D. Cal. 1994). Phrases such as "*Selling Fast*" and "*Flash Sale*" are too vague and subjective to be actionable. *Ledesma*, 2026 WL 1146742, at *6 (finding "that 'instant' is non-actionable puffery because it is not a quantifiable statement, but a general, subjective claim about how quickly Defendants' products purportedly work"); *Vitamin Energy, Inc. v. Bhargava*, 2025 WL 2506104, at *7 (E.D. Mich. Aug. 29, 2025) ("The use of the term 'fast' allows room for variation in how quickly the product works."). In fact, the Washington Court of Appeals has expressly held that "*Selling Fast*" is "not sufficiently definite to justify" a misrepresentation claim. *Brummett v. Washington's Lottery*, 171 Wn. App. 664, 682 (2012) (dismissing misrepresentation and CPA claims about "selling fast"). The phrase "*Almost Gone*" is similarly vague. Does "*Almost Gone*"

mean something will be gone in one day? Two? Ten? Because there is no objective standard in the subject line alone, it is not actionably false under CEMA.

Likewise, the phrase "*Final Thrill*" provides no objective statement about when any promotion will end. Claims about emotions and feelings are regularly dismissed as puffery. *Macomb Cty. Emps. Ret. Sys. v. Align Tech., Inc.*, 39 F.4th 1092, 1098 (9th Cir. 2022) ("[V]ague statements of optimism like 'good,' 'well-regarded,' or other feel good monikers, are not actionable because professional investors, and most amateur investors as well, know how to devalue the optimism of corporate executives."); *Mallozzi v. Innovative Indus. Props.*, 2023 WL 6121499, at *11 (D.N.J. Sep. 19, 2023) (recognizing that "[s]tatements like being 'excited,' '***thrilled***,' or 'proud,' are expressions of optimism and hope" and therefore puffery) (emphasis added). None of these phrases include objective statements about the end of a sale, so they are not actionably false or misleading. Plaintiffs' claims regarding all of these subjects should be dismissed.

### B. The Complaint's CPA Claim is Wholly Derivative of its CEMA Claim and Fails for the Same Reasons.

Because the Complaint fails to state a CEMA claim, its CPA claim fails as well. *Virtumundo*, 575 F.3d at 1065-66 ("Because [plaintiff's] CEMA claims fail as a matter of law, his CPA claims, to the extent grounded in CEMA violations, are likewise inadequate and were properly dismissed."). Plaintiff does not allege an independent CPA claim, and because Plaintiff's CEMA claim requires dismissal, her CPA claim fails as well. *See, e.g., Sur La Table*, 655 F.Supp.3d at 1093 (dismissing derivative CPA claim because of failure to state a CEMA claim).

Nor could Plaintiff allege a standalone claim under the CPA, which requires plaintiffs to allege five elements: "(1) an unfair or deceptive act or practice, (2) that occurs in trade or commerce, (3) a public interest, (4) injury to the plaintiff in his or her business or property, and (5) a causal link between the unfair or deceptive act and the injury suffered." *Meade*, 2026 WL 2098093, at *5. However, when basing a claim on deceptive emails, "[a] successful CEMA claim establishes only the first three elements" of the CPA. *Id*. "The CPA still requires the plaintiff to



DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA 98104-7029 | Tel: 206.839.4800

show the defendant caused injury to their business or property." *Id*. Vague or conclusory references to harm, without more, do not satisfy that requirement. *Id*. (dismissing CPA claim because plaintiff alleged only, in conclusory fashion, that emails constituted "harassment"). Here, the Complaint alleges no injury to Plaintiff whatsoever. That omission is independently fatal to the CPA claim, which should be dismissed.

## V. CONCLUSION

For all of these reasons, the Court should dismiss the Complaint with prejudice.

Dated: August 31, 2026

**DLA PIPER LLP (US)**

By: *s/ David Freeburg**
David Freeburg, WSBA No. 48935
701 Fifth Avenue, Suite 6900
Seattle, Washington 98104-7029
Tel: 206.839.4812
Email: *David.Freeburg@us.dlapiper.com*

AND

Angela C. Agrusa (*pro hac vice*)
Erin T. Huntington (*pro hac vice*)
2000 Avenue of the Stars, Suite 400 North Tower
Los Angeles, California 90067-4704
Tel: 310.595.3000
Email: *Angela.Agrusa@us.dlapiper.com*
Email: *Erin.Huntington@us.dlapiper.com*

*Attorneys for Defendant NeoStrata Company, Inc.*

**I certify that this memorandum contains 6,775 words, in compliance with the Local Civil Rules*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 31, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all parties or their counsel of record.

Dated this 31st day of August, 2026.

*s/ David Freeburg*
David Freeburg



DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA 98104-7029 | Tel: 206.839.4800