The Honorable Tiffany M. Cartwright

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

TIFFANY SHEFFIELD, on her own behalf and on behalf of others similarly situated,

Plaintiff,

v.

NEOSTRATA COMPANY, INC., d/b/a NEOSTRATA AND EXUVIANCE,

Defendant.

No. 3:26-cv-05764-TMC

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS



CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
TEL. 317.636.6481 FAX 317.636.2593

## TABLE OF CONTENTS

INTRODUCTION ... 1

FACTUAL & PROCEDURAL BACKGROUND ... 1

STANDARD OF REVIEW ... 3

ARGUMENT ... 4

I. The Court Should Not Consider Defendant's Outside "Facts." ... 4

II. Rule 12 Dismissal is Not Warranted Here. ... 8

A. Rule 9(b) Does Not Govern Plaintiff's Claims. ... 9

B. Plaintiff Pleads Defendant's Scheme of Spamming Consumers, Like Plaintiff, With False Time Scarcity Subject Lines. ... 10

C. Plaintiff Has Sufficiently Pled She Received Emails with Subject Headings That Violate CEMA. ... 12

D. Plaintiff Has Sufficiently Pled Neostrata's Knowledge of Her Washington Residency. ... 15

III. Plaintiff's Claims Are Not Time-Barred Because CEMA Claims Are Per Se CPA Claims Subject to the CPA's Four-Year Limitations Period. ... 17

IV. The Challenged Subject Lines Are Factual Representations, Not Mere Puffery. ... 19

V. Plaintiff's CPA Claim Survives. ... 23

CONCLUSION ... 25



CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
TEL. 317.636.6481 FAX 317.636.2593

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aerofund Fin., Inc. v. Elliott*,
11 F. App'x 792 (9th Cir. 2001) ....................5, 16

*Agnew v. Macy's Retail Holdings, LLC*,
2026 WL 764140 (W.D. Wash. Mar. 18, 2026) ....................1, 9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................4

*Boquist v. Courtney*,
32 F.4th 764 (9th Cir. 2022) ....................4

*Brown v. Old Navy, LLC*,
4 Wash. 3d 580 (2025).................... *passim*

*Brummett v. Washington's Lottery*,
171 Wn. App. 664 (2012) ....................22

*In re California Bail Bond Antitrust Litig.*,
511 F. Supp. 3d 1031 (N.D. Cal. 2021) ....................15

*Cerkezoglu v. Federici Brands LLC*,
2026 WL 1858279 (W.D. Wash. June 29, 2026)....................1

*Dawson v. Porch.com*,
2024 WL 4765159 (W.D. Wash. Nov. 13, 2024) ....................19

*Devivo v. Sheex Inc.*,
2026 WL 1734589 (W.D. Wash. June 16, 2026)....................1

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
751 F.3d 990 (9th Cir. 2014) ....................13

*Elliott v. Aaniih Nakoda Fin. LLC*,
2026 WL 1622917 (W.D. Wash. June 5, 2026)....................16

*Erwin v. Seattle Times Co.*,
2026 WL 2323137 (King Cnty. Sup. Ct. Aug. 5, 2026) ....................14

*Ferguson v. Quinstreet, Inc.*,
2008 WL 3166307 (W.D. Wash. Aug. 5, 2008), *aff'd sub nom.* 348 F. App'x 255 (9th Cir. 2009)....................12



CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
TEL. 317.636.6481 FAX 317.636.2593

*Fingles v. Cont'l Cas. Co.*,
2010 WL 1718289 (E.D. Pa. Apr. 28, 2010) ....................9

*Gordon v. BAC Home Loans Servicing, LP*,
2011 WL 13228393 (E.D. Wash. Feb. 11, 2011) ....................19

*Gordon v. BAC Home Loans Servicing, LP*,
2011 WL 1565363 (E.D. Wash. Apr. 25, 2011) ....................19

*Gordon v. BAC Home Loans Servicing, LP*,
465 F. App'x 731 (9th Cir. 2012) ....................19

*Gordon v. Virtumundo, Inc.*,
575 F.3d 1040 (9th Cir. 2009) ....................19

*Harbers v. Eddie Bauer, LLC*,
415 F. Supp. 3d 999 (W.D. Wash. 2019) ....................18, 24

*Harrington v. Vineyard Vines, LLC*,
813 F. Supp. 3d 1218 (W.D. Wash. 2025), *reconsideration denied,* 2026 WL 125134 (W.D. Wash. Jan. 16, 2026) ....................1, 14, 15, 22

*Henry v. IAC/Interactive Grp.*,
2006 WL 3192521 (W.D. Wash. Nov. 2, 2006) ....................5

*Ibrahim v. Dep't of Homeland Sec.*,
669 F.3d 983 (9th Cir. 2012) ....................16

*Jackson v. Hanesbrands, Inc.*,
2026 WL 1161444 (E.D. Wash. Apr. 28, 2026) ....................1

*Jerde v. Bylt LLC*,
2026 WL 415445 (W.D. Wash. Feb. 13, 2026) ....................1

*Kempf, et al. v. FullBeauty Brands Ops.*,
2026 WL 395677 (W.D. Wash. Feb. 12, 2026) ....................1, 16

*Kennedy v. Venrock Assocs.*,
348 F.3d 584 (7th Cir. 2003) ....................9

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) ....................4, 5, 6, 8

*King v. Amazon.Com Servs. LLC*,
2026 WL 628261 (W.D. Wash. Mar. 6, 2026) ....................9, 10

*Las Vegas Sands, LLC v. Nehme*,
632 F.3d 526 (9th Cir. 2011) ....................7



CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
TEL. 317.636.6481 FAX 317.636.2593

*Latimer v. AT&T Mobility LLC*,
605 F. Supp. 3d 1333 (W.D. Wash. 2022)....................18

*Ledesma v. Hismile, Inc.*,
2026 WL 1146742 (N.D. Cal. Apr. 28, 2026)....................20

*Lee v. City of Los Angeles*,
250 F.3d 668 (9th Cir. 2001)....................4

*Lierboe v. State Farm Mut. Auto. Ins. Co.*,
350 F.3d 1018 (9th Cir. 2003)....................11

*Liss v. Skechers USA Inc.*,
2026 WL 1392327 (W.D. Wash. May 19, 2026)....................1

*Littlejohn v. Kaiser Fdn. Health Plan of Wash.*,
2024 WL 4451955 (W.D. Wash. Oct. 9, 2024)....................4, 15, 17

*Ma v. Nike*,
816 F. Supp. 3d 1227 (W.D. Wash. 2026)....................1, 24

*Meade v. Profusion Cosmetics Corp.*,
No. 2:26-cv-05498-BHS (W.D. Wash. July 16, 2026)....................19, 24

*New Mexico State Inv. Council v. Ernst & Young LLP*,
641 F.3d 1089 (9th Cir. 2011)....................17

*Osborne v. Boeing Co.*,
No. C15-223RSL, 2016 WL 1046094 (W.D. Wash. Mar. 16, 2016)....................7

*Panag v. Farmers Ins. Co. of Washington*,
204 P.3d 885 (Wash. 2009)....................15, 23

*Reid v. Johnson & Johnson*,
780 F.3d 952 (9th Cir. 2015)....................15

*Repperger v. Ulta Salon, Cosms. & Fragrance, Inc.*,
2026 WL 1157157 (E.D. Wash. Apr. 28, 2026)....................1, 25

*Roth v. BASF Corp.*,
2008 WL 2148803 (W.D. Wash. May 21, 2008)....................5

*Saeger v. Pac. Life Ins. Co.*,
94 F. App'x 544 (9th Cir. 2004)....................23

*Sanh v. RISE Credit Serv. of Texas, LLC*,
2022 WL 16854329 (W.D. Wash. Nov. 10, 2022)....................6



CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
TEL. 317.636.6481 FAX 317.636.2593

*Sauk-Suiattle Indian Tribe v. City of Seattle*,
25 Wn. App. 2d 741, 749 (2023) .......... 20

*Sperling v. DSW*,
699 Fed. Appx. 654 (9th Cir. 2017) .......... 14

*State v. Heckel*,
143 Wash. 2d 824 (2001) .......... 24

*State v. J.P.*,
149 Wash. 2d 444 (2003) .......... 17, 18, 19

*Stevens-Hill v. Neostrata LLC*,
2026 WL 1741316 (W.D. Wash. June 17, 2026) .......... 1, 25

*Ebeid ex rel. U.S. v. Lungwitz*,
616 F.3d 993 (9th Cir. 2010) .......... 10

*Victor v. U.S. Bank*,
2016 WL 792420 (E.D. Wash. Feb. 29, 2016) .......... 18

*Washington v. Ulta Salon, Cosms. & Fragrance, Inc.*,
2026 WL 571122 (E.D. Wash.) .......... 21

*Washington v. Ulta Salon, Cosms. & Fragrance, Inc.*,
822 F. Supp. 3d 1223 (E.D. Wash. 2026) .......... 1

*Wilmuth v. Amazon.com Inc.*,
2024 WL 5088337 (W.D. Wash. Dec. 12, 2024) .......... 11

*Wright v. Lyft, Inc.*,
189 Wash. 2d 718 (2017) .......... *passim*

*Young v. Toyota Motor Sales, U.S.A.*,
442 P.3d 5 (Wash. Ct. App. 2019) .......... 15, 21

**Statutes**

Wash. Rev. Code § 19.190.020 .......... 5, 6, 13, 17

Wash. Rev. Code § 19.190.030 .......... *passim*

Wash. Rev. Code § 4.16.130 .......... 17

Wash. Rev. Code § 19.86.093 .......... 17, 18, 19

Wash. Rev. Code §19.86.120 .......... 17, 18



CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
TEL. 317.636.6481 FAX 317.636.2593

**Rules**

Fed. R. Civ. P. 12(d) ....................................................................................................................5



CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
TEL. 317.636.6481 FAX 317.636.2593

## INTRODUCTION

This case concerns deceptive email marketing communications prohibited by Washington law. *See generally Brown v. Old Navy, LLC*, 4 Wash. 3d 580 (2025). Curiously avoiding mention of Fed. R. Civ. P. 12, under which Defendant Neostrata Company, Inc. ("Neostrata")'s Motion to Dismiss, Dkt. 18 ("Mot."), must come, Neostrata's arguments are not new. They align with those that have been presented, and rejected, by court after court in this District and the Eastern District of Washington. *See, e.g., Ma v. Nike*, 816 F. Supp. 3d 1227, 1230–32 (W.D. Wash. 2026); *Harrington v. Vineyard Vines, LLC*, 813 F. Supp. 3d 1218, 1220 (W.D. Wash. 2025), *reconsideration denied,* 2026 WL 125134 (W.D. Wash. Jan. 16, 2026); *Kempf, et al. v. FullBeauty Brands Ops.*, No. C25-1141 TSZ, 2026 WL 395677, at *4–5 (W.D. Wash. Feb. 12, 2026); *Jerde v. Bylt LLC*, 2026 WL 415445 (W.D. Wash. Feb. 13, 2026); *Agnew v. Macy's Retail Holdings, LLC*, No. 2:25-CV-02006-JHC, 2026 WL 764140 (W.D. Wash. Mar. 18, 2026); *Washington v. Ulta Salon, Cosms. & Fragrance, Inc.*, 822 F. Supp. 3d 1223 (E.D. Wash. 2026); *Jackson v. Hanesbrands, Inc.*, No. 2:25-CV-00440-SAB, 2026 WL 1161444 (E.D. Wash. Apr. 28, 2026); *Liss v. Skechers USA Inc.*, No. 3:25-CV-05861-DGE, 2026 WL 1392327 (W.D. Wash. May 19, 2026); *Stevens-Hill v. Neostrata LLC*, No. 3:26-CV-05003-DGE, 2026 WL 1741316 (W.D. Wash. June 17, 2026); *Repperger v. Ulta Salon, Cosms. & Fragrance, Inc.*, No. 2:25-CV-00526-RLP, 2026 WL 1157157 (E.D. Wash. Apr. 28, 2026); *Cerkezoglu v. Federici Brands LLC*, No. 3:25-CV-06108-DGE, 2026 WL 1858279 (W.D. Wash. June 29, 2026); *Devivo v. Sheex Inc.*, No. 3:25-CV-05807-DGE, 2026 WL 1734589 (W.D. Wash. June 16, 2026).

As these courts have found, here too, Neostrata's Motion to Dismiss should be denied.

## FACTUAL & PROCEDURAL BACKGROUND

Neostrata violated the Commercial Electronic Mail Act ("CEMA"), Wash. Rev. Code Ann.



CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
TEL. 317.636.6481 FAX 317.636.2593

§ 19.190.020, by sending commercial emails with misleading subject lines to consumers, including Plaintiff. *See, e.g.*, Dkt. 3-1 ("Complaint" or "Compl."), ¶¶ 3–7, 140–147. CEMA protects Washington residents from commercial emails with any false or misleading information in the subject lines. *See generally Brown,* 4 Wash. 3d 580. Specifically, Neostrata engages in a practice of knowingly sending "false time scarcity" emails which extend promotions beyond the dates originally referenced in earlier promotions. Compl., ¶¶ 39–138.

So Neostrata's spam tactics not only crowd consumers' inboxes with junk mail. As pled in the Complaint, its marketing scheme blasts consumers with email subject headings that falsely state when sales are ending—to gin up consumer urgency on the deal. The Complaint exhaustively catalogues dozens of examples of this conduct (Compl., ¶¶ 42-131), but an example—involving Plaintiff herself—demonstrates the ruse. On April 19, 2026, Neostrata sent Plaintiff, and putative class members, a commercial email with the subject heading: "48 Hours Only: Buy One, Get One Free[.]" Compl., ¶¶ 127, 144. The next day, April 20, 2026, Defendant reiterated the advertised deadlines in another email subject line, about the BOGO offer, transmitted to Plaintiff and consumers: "Our Offer Ends Tonight[.]" *Id.* at ¶¶ 128, 145. But as Neostrata's later emails demonstrate: the purported April 20th deadline for its BOGO offer was false. The very next day, on April 21, Neostrata revealed the lie in its prior emails by offering a purported "SURPRISE EXTENSION" on the BOGO sale. *Id.* at ¶ 129. As this email demonstrates: the "BOGO" promotion did not "end" on April 20, and Neostrata's prior representations were false.

As the Complaint further makes clear: this is no mistake. This bait-and-switch scheme—where "Neostrata regularly titles its emails with urgent subject headings that do not reflect the true availability of the advertised deal" (Compl., ¶ 42)—is a well-worn strategy Neostrata knowingly employs to trigger consumers' reaction to the purported scarcity of deals on its products. *See id.* at



CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
TEL. 317.636.6481 FAX 317.636.2593

¶¶ 42–131 (describing Neostrata's "strategy" and "practice" to create false urgency with regard to its promotions). It's a "psychologically effective" trick to "manipulatively distort[ ] [consumers'] decision-making to *their detriment—and seller's benefit*." *Id.* at ¶¶ 33, 36; *see id.* at ¶¶ 29-37 (discussing effect of price scarcity messaging on consumers).

These allegations align precisely with the factual misrepresentations that the Washington Supreme Court has concluded run afoul of CEMA. *Brown*, 4 Wash. 3d at 596 ("Mere puffery is contrasted by representations of fact—like the duration or availability of a promotion, its terms and nature, the cost of goods, and other facts Washington residents would depend on in making their consumer decisions."). These are specific misrepresentations about the "duration [and] availability" of promotions. Plaintiff alleges dozens of examples of the same deceptive scheme, spanning more than three years, from November 2022 through April 2026. Compl., ¶¶ 42–131.

Nor is this simple clever marketing or an innocent business practice. By false representations, Neostrata manipulates consumers' perception of the need for urgent action on its deals—all in the interests of its own bottom line. Decades ago, the Washington Legislature created a remedy through CEMA to protect Washingtonians from precisely this deceptive conduct. Ignoring the weight of settled authority, Neostrata—apparently dissatisfied with both the statute as enacted and the prospect that it may be held liable under it—asks this Court to ignore it. Setting Defendant's policy disagreement with CEMA aside, Plaintiff is entitled to seek relief under the law. *See* Mot., 1.

## STANDARD OF REVIEW

Defendant's Motion appears to come under Federal Rule of Civil Procedure 12(b)(6), notwithstanding that the Rule is not-once mentioned. *See generally* Mot. The Motion is captioned, "Motion to Dismiss" and it repeatedly argues for dismissal of the pleadings in this matter. *See id.*



CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
TEL. 317.636.6481 FAX 317.636.2593

Thus, Plaintiff treats the Motion as pursuant to Rule 12(b)(6), under which the well-pled factual allegations are taken as true and all reasonable inferences are drawn in the plaintiff's favor. *Littlejohn v. Kaiser Fdn. Health Plan of Wash.*, 2024 WL 4451955, at *3 (W.D. Wash. Oct. 9, 2024). A Rule 12(b)(6) motion must be denied if the complaint states a claim that is "plausible on its face." *Id.* (quoting *e.g.*, *Boquist v. Courtney*, 32 F.4th 764, 773 (9th Cir. 2022) (quotations omitted)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (quotations omitted).

## ARGUMENT

### I. The Court Should Not Consider Defendant's Outside "Facts."

The declaration submitted by Neostrata's counsel—and the *hundreds of pages* of attachments thereto—is wholly improper on this motion to dismiss. *See generally* Dkt. 18-1 ("Freeburg Dec."). The Declaration fails to meet the narrow threshold, under Fed. R. Civ. P. 12(d), for permitting "outside matters" on this Motion. Even so, it likewise fails under the most basic evidentiary standards. Attesting counsel has no personal knowledge whatsoever about the Milled.com site for the attested-to emails—or indeed, whether the emails reproduced on Milled.com replicate those transmitted by his own client. And there *is* no Rule, case, or authority of any kind that would transform counsel's legal conclusions into *facts* thereby permitting consideration of the "chart" submitted in support of Defendant's arguments herein.

Under Rule 12(d), "district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018) (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)). "When matters outside the pleading are presented to and not excluded by the court, the 12(b)(6) motion



CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
TEL. 317.636.6481 FAX 317.636.2593

converts into a motion for summary judgment under Rule 56." *Id.* (quoting Fed. R. Civ. P. 12(d) (internal quotations omitted)). This general rule is subject to two narrow exceptions: "the incorporation-by-reference doctrine, and judicial notice under Federal Rule of Evidence 201." *Id.* As to judicial notice, a court can consider an "adjudicative fact if it is "not subject to reasonable dispute," because "it is 'generally known,' or 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" *Id.* at 999 (quoting Fed. R. Evid. 201). And "incorporation-by-reference" looks to documents that treats "are part of the complaint itself." *Id.* at 1002.

As a preliminary matter, Defendant proffers *no basis* for this Court's consideration of its outside materials—let alone a cognizable basis under Rule 12(d). Instead, Neostrata curiously skips over Rule 12(d) and treats its purported facts as "background" on the Motion. *See* Mot., 3; *see generally id.* (no mention or argument regarding Rule 12(d)). For this reason alone, Neostrata has waived argument regarding the materials, and the Court can summarily disregard them.[1]

Nor is there a basis for the inclusion of these "outside matters" here. The emails themselves are not "incorporated by reference" in the Complaint which solely regards Defendant's deceptive *email subject headings*—on which CEMA liability, and liability on Plaintiff's per se CPA claim, turn. *See, e.g.*, RCW 19.190.020(1)(b) (liability for transmission of "commercial electronic mail message" with "false or misleading information in the subject line"); *see* Compl., ¶ 160 (same).

---

[1] *See, e.g.*, *Roth v. BASF Corp.*, 2008 WL 2148803, at *3 (W.D. Wash. May 21, 2008) ("It is not acceptable legal practice to present new evidence or new argument in a reply brief[.]"); *Henry v. IAC/Interactive Grp.*, 2006 WL 3192521, at *3 (W.D. Wash. Nov. 2, 2006) (emphasizing, "a moving party cannot submit new information as part of its Reply if such evidence attempts to introduce new facts or different legal arguments that were not presented in the motion itself");*see also Aerofund Fin., Inc. v. Elliott*, 11 F. App'x 792, 794 (9th Cir. 2001) ("We decline to consider Aerofund's argument that to allow the offsets claimed by ADT would amount to affirmative relief, because the argument was not raised in the opening brief.").



CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
TEL. 317.636.6481 FAX 317.636.2593

The deceptive email *subject lines* are wholly pled in the Complaint. *Id.* at ¶¶ 42-131. Further information regarding the emails themselves is irrelevant to Defendant's liability as to the "false or misleading information in the subject line[s]." § 19.190.020(1)(b).

Moreover, Defendant's effort to include the purported emails—as well as the counsel-generated "chart"—in support of the "various reasons for dismissal" (Mot., 3) is improper. As the Ninth Circuit has made clear, the circumstances are "*rare*" when "assess[ment] [o]f the sufficiency of a claim requires that the document at issue be reviewed, even at the pleading stage"—moreover, "if the document merely creates a defense to the well-pled allegations in the complaint, then that document did not necessarily form the basis of the complaint." *Khoja*, 899 F.3d at 1002 (emphasis added). "Otherwise, defendants could use the doctrine to insert their own version of events into the complaint to defeat otherwise cognizable claims." *Id.* So, Defendant's documents don't come in, as irrelevant to the *complete* pleadings regarding email subject lines; and they don't come in, because they are being introduced to bolster Defendant's bid for dismissal. *See id.* at 1003 (emphasizing, "it is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint"); *see also Sanh v. RISE Credit Serv. of Texas, LLC*, 2022 WL 16854329, at *3 (W.D. Wash. Nov. 10, 2022) (same) (finding, "[i]n the context of a motion to dismiss, the Court is not free to draw adverse inferences" based, in part on documents outside the pleadings).

Neostrata has not proffered any evidentiary basis for inclusion of the documents—including any argument that the emails are subject to judicial notice. They aren't. While they may be "publicly available" from Milled.com, as attested by counsel, the third-party website itself and its contents are plainly not the sort of "adjudicative fact[s]" that are "generally known," or "sources whose accuracy cannot reasonably be questioned.'" *Khoja*, 899 F.3d at 999.



CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
TEL. 317.636.6481 FAX 317.636.2593

Neostrata instead attempts to introduce these outside facts through attestation of counsel, who neither attests to any "personal knowledge" regarding Milled.com nor to the practices under which the purported emails were retrieved and displayed on the site. This does not make the cut under Rule 901(a). Rather, "[a] document authenticated through personal knowledge must be attached to an affidavit, and the affiant must be a competent witness who wrote [the document], signed it, used it, or saw others do so." *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532–33 (9th Cir. 2011) (citation omitted). As the Ninth Circuit emphasized in *Las Vegas Sands*: "where exhibits are introduced by being attached to an affidavit [ ] a person [with] personal knowledge is essential to establish the document is what it purports to be—that it is authentic." *Id.; see also Osborne v. Boeing Co.*, No. C15-223RSL, 2016 WL 1046094, at *5 (W.D. Wash. Mar. 16, 2016) (personal knowledge must be based on the declarant's "own personal experience").

Counsel has no such personal knowledge here. Instead, in an improper sleight of hand, he rather attests to his "personal knowledge and *review* of business records," while failing to attest to personal knowledge about the "regular practice of corporate activities" and "ordinary course of business at Neostrata and Milled.com." Freeburg Dec., ¶¶ 1-2. Indeed, how could he? He has not demonstrated employment with either corporate entity, such that he would have personal knowledge of their practices. Certainly, he never once attests that the emails themselves were retrieved from his client. *See generally id.*

Finally, Defendant's "chart"—listing substantive categories aligned with its arguments on dismissal, *e.g.,* "not sent to Plaintiff," "Statute of Limitations," "Nothing about time"—is a wholly improper inclusion of argument outside of the Motion itself. Evidently, these attestations are arguments, not facts. They are not a proper subject of attestation; they fall entirely outside of Defendant's Motion; and they should be wholly excluded from this Court's consideration.



CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
TEL. 317.636.6481 FAX 317.636.2593

In sum: the Declaration and incorporated documents should be excluded as an improper attempt by Defendant to "pile on numerous documents to [its] motion[ ] to dismiss to undermine the complaint, and hopefully dismiss the case at an early stage." *Khoja*, 899 F.3d at 1002. Such "unscrupulous use of extrinsic documents to resolve competing theories against the complaint" cannot be permitted here to seek "premature dismissal[ ] of [Plaintiff's] plausible claims." *Id.*

The Court cannot consider Defendant's declaration or attached documents on this Motion to Dismiss. They should be disregarded.

## II. Rule 12 Dismissal is Not Warranted Here.

Neostrata's motion is a house of cards that crumbles under Rule 12 review. *First,* Neostrata ignores that this is a putative class action case to incorrectly assert that Plaintiff cannot pursue claims about emails she did not receive. Not so. Defendant cannot handicap Plaintiff's future Rule 23 motion by limiting the complaint to only those emails Plaintiff received. Plaintiff has pled Defendant's *scheme*, a scheme under which she received emails. This is more than sufficient. *Second,* Neostrata misses the point by contending that the four emails Plaintiff did receive cannot be false or misleading, as to her, unless she personally received the "extension" email that demonstrated the lie. A lie is a lie, whether a consumer knows of the untruth or not. Plaintiff received the deceptive emails; that is all she needs to allege. *Third,* Neostrata is wrong—Plaintiff has amply pled—under the applicable standard, which *permits knowledge to be alleged generally*—that Neostrata knew, or had reason to know, she is a Washington resident. *Fourth,* the four-year statute of limitations under the CPA applies here, and the (albeit sparing) authority favors this conclusion, not Neostrata's invocation of a two-year catch-all statute of limitations. *Fifth,* Neostrata is simply wrong that phrases like "Final Hours," "Last Chance," and "Last Call" are inactionable puffery; these statements comprise factual representations about the duration and



CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
TEL. 317.636.6481 FAX 317.636.2593

availability of deals, and therefore, survive dismissal. *Finally*, as the Supreme Court of Washington made clear in *Wright*, Plaintiff's per se CPA claim follows from her well-pled claim under CEMA, and on that firm ground, it stands. The Motion should be denied.

### A. Rule 9(b) Does Not Govern Plaintiff's Claims.

Neostrata makes the curious choice of seeking dismissal without once mentioning Rule 12—and presumably thereby, avoiding the standard of review on its motion. Instead—and threaded throughout the Motion—Neostrata focuses on its (incorrect) assumption that the Complaint is reviewed under the heightened *pleading* standard pursuant to Rule 9(b), incorporating fraud—a claim that is not at issue here. Mot. 6, 7, 8, 9, 10.

Putting aside that Rule 9(b) is not a *standard of review*, Neostrata clearly believes it must (mis)characterize Plaintiff's CEMA and per se CPA claims as claims for fraud to win dismissal. But there is no fraud claim in this case, and Rule 9(b) doesn't apply here. Neither CEMA nor the CPA requires proof of fraudulent intent. *Wright v. Lyft, Inc.,* 189 Wash. 2d 718, 728 (2017) (delineating the elements of CEMA and CPA claims, none of which requires intent). Rule 9(b) "is strictly construed; it applies to fraud and mistake and nothing else." *Kennedy v. Venrock Assocs.,* 348 F.3d 584, 593 (7th Cir. 2003); *see also Fingles v. Cont'l Cas. Co.,* No. CIV.A.08-05943, 2010 WL 1718289, at *7 (E.D. Pa. Apr. 28, 2010) ("[F]rom a procedural standpoint, Rule 9(b) is not implicated by allegations of deceptive conduct."). Courts applying CEMA have likewise held that Rule 9(b) does not govern these claims. *See Agnew v. Macy's Retail Holdings, LLC,* 2026 WL 764140, at *1 n.1 (W.D. Wash. Mar. 18, 2026).

Neostrata's own authorities do not hold otherwise. Both *Water & Sanitation Health, Nemykina,* and *King v. Amazon* addressed complaints that expressly pled a defendant's fraudulent scienter — that the defendant acted "deliberately," "knowingly," or "purposely" as an element of



CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
TEL. 317.636.6481 FAX 317.636.2593

the claim itself. Mot., 6 (citing *King v. Amazon.Com Servs. LLC,* 2026 WL 628261, at *3 (W.D. Wash. Mar. 6, 2026)). Plaintiff's use of comparable adverbs to describe Neostrata's conduct does not convert a CEMA and per se CPA claim — which requires no showing of intent — into one sounding in fraud. *See Wright,* 189 Wash. 2d at 728.

Even presuming Rule 9(b) applied (it does not), the Complaint satisfies it:

> ***Who:*** Neostrata. Compl., ¶¶ 4, 11.
>
> ***What:*** Sent commercial emails with false or misleading subject lines creating a false sense of urgency, and later extended the very promotions those subject lines said were ending. *Id.* at ¶¶ 42–138.
>
> ***When:*** On dates including November 11, 2022, July 4, 2023, April 19, 2026, and April 20, 2026, as to Plaintiff, *id.* at ¶¶ 142–145, and on numerous specified dates as to putative class members. *Id.* at ¶¶ 47–131.
>
> ***Where:*** At Plaintiff's personal Gmail address. *Id.* at ¶ 141.
>
> ***How:*** By subject lines containing specific, identified false or misleading statements about the duration and availability of Neostrata's promotions. *Id.* at ¶¶ 47–131, 146–147.

That is more than sufficient "to give [defendant] notice of the particular misconduct which is alleged to constitute the fraud." *Ebeid ex rel. U.S. v. Lungwitz,* 616 F.3d 993, 999 (9th Cir. 2010) (citation omitted). Rule 9(b) does not apply here, and even if it did, it is satisfied.

### B. Plaintiff Pleads Defendant's Scheme of Spamming Consumers, Like Plaintiff, With False Time Scarcity Subject Lines.

Neostrata's assertion that Plaintiff "cannot state a valid CEMA claim regarding the emails she did not receive," misses the forest for the trees. Mot., 8. Defendant wants to cabin the Complaint to a handful of discrete emails. But Plaintiff isn't challenging a handful of emails on behalf of herself; she is challenges Defendant's *scheme* of sending such emails to herself *and* putative class members. The Complaint is clear that Neostrata "is engaged in persistent marketing through mass email campaigns across the United States." Compl., ¶ 132. And it engages in a



CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
TEL. 317.636.6481 FAX 317.636.2593

"*scheme* to compel consumers to purchase its products," through "send[ing] spam emails to consumers" with "urgent subject headings that do not reflect the true availability of the advertised deal," and further, that the specifically pled emails are just "*examples*" of that "scheme." *Id.* at ¶¶ 39, 42. This is clear through extensive pleadings that Neostrata engages in a "scheme," "strategy," or "tactic" to misrepresent the availability of deals on its products. *Id.* at ¶¶ 4, 39, 43, 46, 47, 52, 57, 64, 81, 84, 87, 90, 105, 113, 117, 125.

These pleadings run directly contrary to the cases cited by Defendant, including *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018 (9th Cir. 2003). See Mot., 8. A decision on Rule 23 certification (not Rule 12 dismissal), *Lierboe* found that where the named plaintiff did not have Article III standing (*i.e.* "a case or controversy with the defendant[ ]"), certification was not warranted. *Id.* at 1022. Neostrata does not assert that Plaintiff has no "case or controversy" against it. *See* Mot., 8–10. Nor has Neostrata made the "disfavored" move of seeking to strike Plaintiff's class allegations. *Wilmuth v. Amazon.com Inc.*, 2024 WL 5088337, at *3 (W.D. Wash. Dec. 12, 2024) (such motions "are particularly disfavored because the shape and form of a class action evolves only through the process of discovery" (citation omitted)). Plaintiff has pled that Defendant is engaged in a scheme—comprised of emails that violate CEMA, and constitute a per se violation of the CPA—including as to those putative members who received them. Defendant can make its Rule 23 challenge when Plaintiff files her motion. Not now.

Plaintiff alleges receipt of four "false or misleading" email subject headings from Defendant that are materially identical to the surfeit of deceptive emails pled in the Complaint, as part of Defendant's "scheme" to create false urgency in the minds of consumers. *Compare* Compl., ¶¶ 140–147 (Plaintiff's emails) *with id.* at ¶¶ 42-100 (pattern of transmitting substantively identical emails to consumers). All of the pled emails come under Plaintiff's central allegation that



CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
TEL. 317.636.6481 FAX 317.636.2593

Neoostrata has violated CEMA by misrepresenting "the true availability" of deals it promotes in the subject lines of its marketing emails. Compl., ¶ 42–131. Discovery may reveal Neostrata sent even more deceptive emails to Plaintiff and putative members.

Nothing in CEMA, Rule 12, or Rule 23 confines Plaintiff to the specific emails she personally received; to the contrary, courts routinely permit CEMA plaintiffs to proceed past the pleading stage on emails sent to the class more broadly, leaving the precise scope of the class and its members' claims for discovery and certification. *See id.*

### C. Plaintiff Has Sufficiently Pled She Received Emails with Subject Headings That Violate CEMA.

Neostrata's focus on the second "extension" email is a distraction. *See* Mot., 9–10. The question is not whether Neostrata later "offered any extensions to Plaintiff," *id.*, or whether Plaintiff personally received every subsequent email in the campaign. The question is whether the email Neostrata actually transmitted, declaring "Final Hours," "Last Call," or otherwise representing that a promotion was about to end, was false or misleading at the moment it was sent. It was. Defendant's extension emails serve only as evidence that the purported deadline communicated in the prior email subject line was "false or misleading." By extending the exact same promotion immediately after representing that consumers had reached their "last chance" or the "final hours" of the sale, Neostrata reveals the lie in its prior representation. Compl., ¶¶ 49–50, 62–63, 127–29. Whether the extension email was received by Plaintiff, another consumer, or all of the above is beside the point. The extension email is not **the** violation; it is **proof** of the violation.[2]

---

[2] Neostrata's reliance on *Ferguson v. Quinstreet, Inc.*, 2008 WL 3166307, at *9 (W.D. Wash. Aug. 5, 2008), *aff'd sub nom.* 348 F. App'x 255 (9th Cir. 2009), is misplaced. *Quinstreet* addressed a different provision of CEMA and a distinct theory of liability from the one asserted here.



CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
TEL. 317.636.6481 FAX 317.636.2593

Accepting Neostrata's argument turns CEMA on its head. The statute is violated when the sender transmits "false or misleading information" in "the subject line" of a commercial email. RCW 19.190.020(1)(b). Thus, if an email falsely states that a sale is ending when the sender knows the sale will continue, the violation occurs the moment that email is sent, not later. *See Brown*, 4 Wash. 3d at 584 (holding that a CEMA violation is complete upon transmission of the email, that liability may arise "in the subject line alone," and that "the injury is receiving an e-mail that violates its regulations"). The subsequent extension email confirms, after the fact, that the deadline touted in the earlier email was false or misleading when Neostrata sent it.

Nor is Plaintiff without a basis to allege that Neostrata knew, when it sent each violative email, that it would extend the promotion. The Complaint thoroughly alleges that Neostrata pursued a "consistent pattern" of advertising deals through an initial promotional email, using follow-up subject lines to present the deal as scarce or time-limited, and then, once the advertised "deadline" had passed, deliberately and "knowingly" extending the promotion to a new end date. Compl., ¶¶ 43–46; *see also id.* at ¶ 131 (Neostrata "engages in email marketing strategies whereby it creates a false sense of urgency, misrepresents when sales end, and then arbitrarily extends those sales to rope in consumers with subject headings that are just not true"). The reasonable inference from this well-pled, years-long scheme — repeated dozens of times using the same tactic — is that Neostrata knew, when it sent each "Final Hours" or "Last Call" or "TODAY ONLY!" or "LAST CHANCE" emails, that it would extend the promotion, just as it had done before and would inevitably do again. Any other plausibly alternative explanation is lacking here. *See Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014) ("Plaintiff's complaint may be dismissed only when defendant's plausible alternative explanation is so convincing that

---



CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
TEL. 317.636.6481 FAX 317.636.2593

plaintiff's explanation is *implausible*.") (emphasis in original). However, if Neostrata has evidence that its advertising executives scrambled in the late evening and early morning hours, between the transmission of its nationally disseminated marketing emails, to decide on a plan for extending its promotions, it may demonstrate that factual reality during discovery.

Neostrata's invocation of *Erwin v. Seattle Times Co.,* 2026 WL 2323137, at *1 (King Cnty. Sup. Ct. Aug. 5, 2026), for the proposition that a "theory of deception based on 'extended sales' is not cognizable," Mot., 9, is unavailing. *Seattle Times* is an unpublished King County Superior Court decision that is neither biding on this Court nor consistent with the weight of authority construing CEMA. *See Harrington*, 813 F. Supp. 3d at 1218 (holding that plaintiffs plausibly alleged CEMA violations based on subject lines containing false or misleading representations concerning the availability and timing of promotional offers); *see also Brown*, 4 Wash. 3d at 584 (confirming that CEMA reaches any false or misleading information in a commercial email, including information regarding the "duration or availability" of a sale). Indeed, the court came to its conclusions with hardly any analysis at all. *See generally Seattle Times Co.,* 2026 WL 2323137.

*Sperling v. DSW*, 699 Fed. Appx. 654 (9th Cir. 2017) is likewise inapposite. *Sperling* involved allegedly deceptive reference prices, a theory that depended on comparisons to external market conditions and historical pricing data. *Id.* at 655. This case requires no more than the deceptive email subject headings themselves. Here, Plaintiff does not allege that Neostrata's prices were misleading when compared to some external benchmark. The falsity is apparent from Neostrata's own communications, as amply pled in the Complaint. *Id.* at ¶¶ 42-131. Unlike the plaintiff in *Sperling*, Plaintiff need not rely on external pricing data or market comparisons to plausibly allege deception. *See id.*

Finally, and independently, whether a statement is false or misleading is "a question of



CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
TEL. 317.636.6481 FAX 317.636.2593

fact" not suited to resolution on a motion to dismiss. *Harrington,* 2025 WL 3677479, at *1 n.3 (W.D. Wash.) (denying motion to dismiss CEMA claims); *see also In re California Bail Bond Antitrust Litig.,* 511 F. Supp. 3d 1031, 1045 (N.D. Cal. 2021) ("Whether a statement is misleading, however, is a question of fact that should not be resolved on a motion to dismiss."); *Reid v. Johnson & Johnson,* 780 F.3d 952, 958 (9th Cir. 2015) (reversing where district court ruled prematurely on such a question). A statement need not even be literally false to be actionably misleading — it is enough that it is "likely to mislead a reasonable consumer." *Young v. Toyota Motor Sales, U.S.A.,* 442 P.3d 5, 9 (Wash. Ct. App. 2019); *see also Panag v. Farmers Ins. Co. of Washington,* 204 P.3d 885, 895 (Wash. 2009) (a communication may be misleading by virtue of the "net impression" it conveys).

### D. Plaintiff Has Sufficiently Pled Neostrata's Knowledge of Her Washington Residency.

The Complaint alleges that Plaintiff is a resident of Pierce County, Washington. Compl., ¶ 10. The reasonable inference — which the Court must draw in Plaintiff's favor at this stage — is that she was a Washington resident not only today, but also when she received the challenged emails at her personal email address. *Littlejohn,* 2024 WL 4451955, at *3 (all reasonable inferences are drawn in the plaintiff's favor). Neostrata identifies no allegation, and offers no reason to suspect, that Plaintiff moved to Washington after receiving Neostrata's emails; absent such a showing, the natural and most plausible inference from the pleaded facts is continuity of residence. *See* Mot., 2, 5, 7, 10–11.

Further, Neostrata's argument that Plaintiff does not allege its knowledge of email recipients' residence fails. Mot., 11–12. Neostrata paints the pleadings as "speculation," ignoring that the Court must draw "all reasonable inferences in favor" of those pleadings. *Id.*; *Littlejohn*, 2024 WL 4451955, at *3. The Complaint includes extensive allegations that, as a "sophisticated



CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
TEL. 317.636.6481 FAX 317.636.2593

commercial enterprise," Neostrata knows of email recipients' Washington residency through, *e.g.*, tying email addresses to online purchases; tracking IP addresses of devices who open its emails[3]; purchasing consumer data from brokers, who link emails to locations; and through "identity resolution" services, that connect emails to location. Compl., ¶¶ 132–138. *See also Kempf, et al.*, v. *FullBeauty Brands Ops.*, No. C25-1141 TSZ, 2026 WL 395677, at *3 (W.D. Wash. Feb. 12, 2026) ("FullBeauty cites no authority that would permit the Court to disregard the allegations of the operative pleading, to draw inferences against Kempf, or to consider contradictory facts or technological information outside the Amended Complaint.").

That is precisely the kind of detailed, defendant-specific pleading that distinguishes this case from Neostrata's own authorities. In *Elliott,* the complaint was dismissed because it "failed to identify any information about how [the] Defendant had knowledge or reason to know" it was emailing a Washington resident. *Elliott v. Aaniih Nakoda Fin. LLC,* 2026 WL 1622917, at *2 (W.D. Wash. June 5, 2026). Here, by contrast, the Complaint identifies six discrete, plausible mechanisms specific to a company of Neostrata's size and sophistication. Knowledge of this kind — how a defendant tracks and targets its own customers — is "peculiarly within [Defendant's] knowledge," Compl., ¶ 132, precisely the circumstance in which courts permit a plaintiff to plead on information and belief and proceed to discovery. *See Ibrahim v. Dep't of Homeland Sec.,* 669 F.3d 983, 992 (9th Cir. 2012) (plausibility requires "more than a sheer possibility," but is "not akin to a probability requirement"). Email marketing in 2026 is not a scattershot postal mailing that goes into the void—it applies sophisticated technology to reach a broad swath of consumers.

Neostrata further takes issue with Plaintiff's allegation of its constructive knowledge, as

[3] Neostrata questions the reliability of IP addresses—*one* method pled by Plaintiff—to determine location. Mot., 12. But its cases do not constitute *evidence* that IP addresses do not reliably geolocate devices. This wholly evidentiary assertion is inappropriate at this pleading stage.



CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
TEL. 317.636.6481 FAX 317.636.2593

provided under CEMA, where the "information is available, upon request, from the registrant of the internet domain name contained in the recipient's electronic mail address." RCW § 19.190.020(b)(2). *See* Mot., 11. CEMA provides for such constructive knowledge, *id.*; Plaintiff has pled Neostrata's constructive knowledge, Compl., ¶¶ 138, 173; and all reasonable inferences from these pleadings must be drawn in her favor. *Littlejohn*, 2024 WL 4451955, at *3.

Neostrata's charges of "speculation" about its own knowledge at this pre-discovery pleading stage are inapposite. As pled here, Neostrata's knowledge and "the means it employs are peculiarly within its knowledge." [4] Compl., ¶ 132. These allegations are more than enough—under the Rule 12 standard for review—to allege that Neostrata knew it was emailing Washington residents.

**III. Plaintiff's Claims Are Not Time-Barred Because CEMA Claims Are Per Se CPA Claims Subject to the CPA's Four-Year Limitations Period.**

Neostrata contends that a two-year "catch-all" limitations period, RCW 4.16.130, bars Plaintiff's claims arising from emails sent before June 10, 2024. Mot., 12–14. That is wrong. The applicable limitations period is four years. The Washington legislature explicitly intertwined CEMA and the CPA, and that statutory design should be given effect by applying the CPA's four-year limitations period to claims arising from CEMA violations. *See* RCW 19.190.030(1), (3); RCW 19.86.093; RCW 19.86.120; *State v. J.P.*, 149 Wash. 2d 444, 450 (2003) (statutes must be construed so that all language is given effect).

Plaintiff alleges both a direct CEMA claim and a per se CPA claim. Compl., ¶¶ 159-165, 166-175. Under CEMA's plain terms, transmitting a commercial email containing false or

---

[4] Even under heightened fraud claims—*not applicable* here—one need only plead a "strong inference" of knowledge. *See, e.g.*, *New Mexico State Inv. Council v. Ernst & Young LLP*, 641 F.3d 1089, 1095 (9th Cir. 2011). This makes sense: at the pleading stage, a plaintiff has little-to-no way of accessing what the defendant *knows*.



CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
TEL. 317.636.6481 FAX 317.636.2593

misleading information constitutes a "violation of the consumer protection act," RCW 19.190.030(1), and "an unfair or deceptive act in trade or commerce . . . for the purpose of applying the consumer protection act." RCW 19.190.030(3). Consistent with that language, the Washington Supreme Court has held that a CEMA violation establishes all five elements of a CPA claim. *Wright*, 189 Wash. 2d at 724, 732; *see also Harbers v. Eddie Bauer, LLC*, 415 F. Supp. 3d 999, 1003 (W.D. Wash. 2019).

Given that statutory framework, applying a two-year limitations period to a CEMA claim while applying a four-year limitations period to the identical conduct pleaded as a per se CPA claim would make little sense and would undermine the Legislature's express incorporation of CEMA into the CPA. The better reading, and the one that gives effect to all statutory provisions, is that claims predicated on CEMA violations are governed by the CPA's four-year limitations period. *See* RCW 19.86.093; RCW 19.86.120; *J.P.*, 149 Wash. 2d at 450. Any other interpretation fails the requirement that "[s]tatutes [be] interpreted and construed so that all the language used is given effect, with no portion rendered meaningless or superfluous." *J.P.*, 149 Wash. 2d at 450.

The express incorporation of CEMA claims as per se CPA violations was the basis for the court in *Latimer v. AT&T Mobility LLC,* 605 F. Supp. 3d 1333, 1340–41 (W.D. Wash. 2022), to hold that a CEMA claim is subject to the CPA's four-year limitations period: "[T]he CPA expressly authorizes suits for unfair or deceptive practices where the claimant alleges a practice that 'violates a statute that incorporates' the CPA such as CEMA." *Id.* (quoting RCW 19.86.093). *Cf. Victor v. U.S. Bank,* 2016 WL 792420, at *3 (E.D. Wash. Feb. 29, 2016) (claims that "sound[ ] of violations" of the CPA are subject to the four-year period). Here, the claim for CEMA violations does not merely "sound of" CPA violations — it constitutes a discrete CPA claim for damages by the statute's own terms.



CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
TEL. 317.636.6481 FAX 317.636.2593

Even if the Court concluded that Plaintiff's CEMA claim were subject to the two-year catch-all, the separate CPA claim must still be governed by the four-year period that applies to CPA claims. *Dawson v. Porch.com,* 2024 WL 4765159, at *9–10 (W.D. Wash. Nov. 13, 2024) (CEMA damages claim "can be pursued only under the CPA, which has a four-year statute of limitations"). The contrary argument — that a per se CPA claim is not afforded the CPA's own limitations period — defies the statutory language that CEMA violations are "violation[s] of the consumer protection act." RCW 19.190.030(1). It hardly follows to first find that a CEMA claim establishes all five elements of a CPA claim, *Wright,* 189 Wash. 2d at 724, 732, and then conclude that the statute of limitations under that self-same statute does not apply. *J.P.,* 149 Wash. 2d at 450 (admonishing against readings that produce "absurd results").

*Meade v. Profusion Cosmetics Corp.,* No. 2:26-cv-05498-BHS (W.D. Wash. July 16, 2026), cited by Neostrata for the contrary two-year rule, Mot., 13, is simply wrong for the reasons described *infra*. The *Gordon* trilogy[5] on which *Profusion* and Neostrata both rely fares no better: each *Gordon* decision predates the Washington Supreme Court's clarification in *Wright* that CEMA violations are per se CPA violations establishing all five elements of a CPA claim, and none of the three *Gordon* opinions considered the statutory-construction argument, grounded in RCW 19.86.093 and RCW 19.190.030(3), that compels a four-year period here. Applying an outdated two-year rule that predates controlling Washington Supreme Court authority would be error.

## IV. The Challenged Subject Lines Are Factual Representations, Not Mere Puffery.

Neostrata devotes a large portion of its Motion to arguing that phrases like "Final Hours,"

[5] *See Gordon v. BAC Home Loans Servicing, LP*, 2011 WL 13228393, at *1 (E.D. Wash. Feb. 11, 2011) (Gordon I); *Gordon v. BAC Home Loans Servicing, LP*, 2011 WL 1565363, at *2 (E.D. Wash. Apr. 25, 2011) (Gordon II); and *Gordon v. BAC Home Loans Servicing, LP*, 465 F. App'x 731 (9th Cir. 2012) (Gordon III).



CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
TEL. 317.636.6481 FAX 317.636.2593

"Last Chance," and "Last Call" are inactionable puffery, and that six other subject lines say nothing about timing at all. Mot., 14–18. Each argument fails.

"[S]ubjective, unverifiable claims about a product or service are 'mere puffery' [and] cannot give rise to a false advertising claim" — but "[m]ere puffery is contrasted by representations of fact—like the duration or availability of a promotion." *Brown,* 4 Wash 3d at 596; *Sauk-Suiattle Indian Tribe v. City of Seattle,* 25 Wn. App. 2d 741, 749 (2023). All of us remember mere puffery from law school: "My legal services are the best in the country!" It is puffery, because there is no objective way to measure it. But the subject lines Neostrata challenges are nothing like that. They are specific, factual representations about when a named, ongoing promotion will end.

Let's start with "Final Hours." Consumers understand that when a retailer invokes the "final hours" of a sale, it means hours remaining in that day — not the total number of hours across two, three, or more days. Compl., ¶¶ 49, 95, 99, 101, 110, 114–115. "Final" means final. A sale in its "final hours" necessarily conveys that only a handful of hours remain — not another full day, and certainly not another sale on the identical terms. When Neostrata tells consumers a promotion is in its "Final Hours" and then extends the sale into the next day, it has not merely used loose or subjective language — it has made, and broken, a concrete factual representation about how much time is left. *See Brown,* 4 Wash 3d at 47 (representations about "the duration or availability of a promotion" are actionable representations of fact, not puffery).

Nevertheless, Neostrata argues that "Final Hours" says nothing about how many hours remain, relying principally on *Ledesma v. Hismile, Inc.,* 2026 WL 1146742, at *7 (N.D. Cal. Apr. 28, 2026). Mot., 15. That analogy fails. *Ledesma* concerned whether teeth-whitening results described as "instant" were actionable, and the court emphasized that "instant" lacked any



CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
TEL. 317.636.6481 FAX 317.636.2593

objective temporal benchmark. *Id.* By contrast, "Final Hours" is not a subjective assessment of product performance. It is a statement about the remaining duration of a specific, ongoing promotion. The phrase conveys that the sale's remaining life is measured in hours rather than days, making it readily verifiable by reference to when the promotion actually ends. A retailer that informs consumers a promotion is in its "Final Hours" and then continues the sale the next day, Compl., ¶¶ 49, 95, 99, 101, 110, 114–115, has made — or at minimum, could reasonably be found to have made — a false or misleading representation concerning the duration of that promotion.

The same is true of the eleven subject lines announcing, "Last Chance" or "Last Call." Compl., ¶¶ 49, 54, 66, 70, 74, 78, 91, 95, 102, 105, 121, 129. "Last call" is not puffery. Consumers across the country understand that "last call" means the bar—or sale—is closing. "Last Call" conveys the factual representation that doors are shutting on an opportunity for more purchases; a retailer's virtual call of "Last Call" is a factual representation that a sale is ending that day.

And these subject lines that say or imply a promotion is subject to a measurable time limitation, when the retailer knows otherwise, violate CEMA. *See Washington v. Ulta Salon, Cosms. & Fragrance, Inc.,* 2026 WL 571122, at *3 (E.D. Wash.) ("The crux of Plaintiffs' claim is [defendant's] promotional e-mails were false or misleading because the subject lines said or implied promotions were for a limited time, but the same or similar offers were extended or reinstated."). And a statement need not be literally false to be actionably misleading if it is "likely to mislead a reasonable consumer." *Young,* 442 P.3d at 9. Plaintiff's own experience shows why. On November 11, 2022, Neostrata told her "Last Chance for 40% OFF Sitewide!" Compl., ¶¶ 49, 142. The very next day, it sent an email announcing another day to shop the identical sale. *Id.* at ¶ 50. "Last" means last. Defendant conveyed that the "last" opportunity was on November 11, despite knowing another one was coming the next day.



CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
TEL. 317.636.6481 FAX 317.636.2593

Neostrata's reliance on *Brummett v. Washington's Lottery,* 171 Wn. App. 664, 682 (2012), is unpersuasive. There, the court's decision on the CPA claim largely turned on the plaintiff's failure to "target the creator of this alleged deception," who was not the defendant. *Id.* at 678. Moreover, the single-sentence finding that the phrase "going fast" was not materially deceptive, *id.*, is refuted by the later holding, in *Brown*, that "'representations of fact[s]–*like the duration or availability of a promotion. . .*' are subject to CEMA's subject-line standards." *Harrington*, 2025 WL 3677479, at *1 (quoting *Brown*, 4 Wash. 3d at 595–96) (emphasis added).

Neostrata also challenges several subject lines that, it says, contain no explicit representation about timing. Mot., 17–18 (citing Compl., ¶¶ 58–59, 67, 73, 77, 90). Not true. Take the December 15, 2022 subject line: "Going, Going, BOGO Sale is Almost Gone!" Compl., ¶ 59. An auctioneer's "going, going, gone" cadence conveys sequential, imminent finality — and "almost gone" means that only moments remain before the deal disappears. Yet the very next day, Neostrata extended the identical BOGO promotion. *Id.* at ¶ 60. The deal was not "almost gone" at all; it had a full additional day of life that Neostrata already planned to give it. The same is true of the March 2, 2025 "Flash Sale! 25% Off Award-Winners" email. *Id.* at ¶ 77. A "flash" is sudden and brief — "flash sale" conveys that the discount will disappear as quickly as it appeared. But Neostrata's "flash sale" did not flash and vanish: it continued into a follow-up promotion the next day. *Id.* at ¶¶ 78–79. And the November 27, 2023 "Selling Fast! 60% Off All Sets" email, *id.* at ¶ 67, represented that inventory or availability was rapidly depleting — the a scarcity message designed to induce a consumer to act now rather than risk missing out — yet the same Cyber Monday discount remained available, and was reoffered, in the days that followed. *Id.* at ¶¶ 66–68.

Neostrata's fallback, that these phrases give no precise number of hours or days, misses



CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
TEL. 317.636.6481 FAX 317.636.2593

the point: the notion that these emails don't give a specific timeframe doesn't mean they aren't misleading under CEMA. A representation need not be false to be misleading — it need only convey a false impression to a reasonable consumer. *See Brown,* 4 Wash 3d at 596; *Panag,* 204 P.3d at 895 (misleading "net impression"). "Going, going, almost gone," "flash," and "selling fast" each convey the same net impression about the "duration or availability" of a deal: act now, because the window is closing. The nature of the "net impression" created by a marketing representation—and whether it arises to deception under CEMA, about the promotion's duration or availability, is a quintessential question of fact. *Id*. It is not resolvable on a motion to dismiss.

*Saeger v. Pac. Life Ins. Co.,* 94 F. App'x 544, 546 (9th Cir. 2004) (reversing where "the district court should not have made the factual determination that the alleged misrepresentations are neither misrepresentations nor material on a 12(b)(6) motion").

Neostrata's forty-plus paragraphs parsing its own subject lines and fine print only confirm that the Complaint is well pled: a reasonable consumer does not dissect a marketing campaign with the aid of litigation counsel, cross-referencing one email against the next in search of qualifications to an earlier promise. CEMA regulates the subject line itself, and a violation may occur "in the subject line alone." *Brown*, 4 Wash 3d at 584. If a subject line requires pages of attorney argument and reference to later emails to avoid its natural meaning, that is a strong indication that the subject line plausibly conveyed a false or misleading message in the first place.

**V. Plaintiff's CPA Claim Survives.**

Finally, Neostrata is wrong that Plaintiff is required to plead the elements of a CPA claim here. Mot., 18-19. As amply discussed *supra*, three decisions by the Supreme Court of Washington have made clear: Plaintiff is not required to plead the elements of a standalone CPA claim to state her claim under the CPA. "A violation of CEMA's e-mail regulations is a per se violation of the



CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
TEL. 317.636.6481 FAX 317.636.2593

Consumer Protection Act (CPA)." *Brown*, 4 Wash. 3d at 584 (citing RCW 19.190.030(1)); *Wright*, 189 Wash. 2d at 730 (same); *State v. Heckel*, 143 Wash. 2d 824, 828 (2001) (same); *see also Harbers*, 415 F. Supp. 3d 999, 1008 ("[B]y alleging a CEMA violation . . . a plaintiff alleges all five elements of a CPA violation[.]"). This choice to make "CEMA violations per se CPA violations" was "predicated on the Legislature's recognition that certain conduct is categorically against the public interest." *Brown*, 4 Wash. 3d at 591-92 (dismissing the defendant's argument that this "interpretation" of CEMA "renders the CPA superfluous"). So, as pled in the Complaint (¶¶ 168-169 (citing *Wright v. Lyft, Inc.*, 189 Wash. 2d 718 (2017)); stated by the statute itself; and reiterated by this state's high court, Plaintiff's well-pled CEMA claim comprises her claim for damages under the CPA.

Because Plaintiff has sufficiently pled her claim under CEMA, the per se CPA claim survives. *See id.* Defendant's reliance on *Profusion* in support of its motion, *see* Mot., 18-19, is misplaced. Following a cursory three-sentence analysis, *Profusion* concluded that a plaintiff must establish injury to business or property to state a CEMA claim. But that conclusion cannot be reconciled with the Washington Supreme Court's holding in *Wright* that "RCW 19.190.040 establishes the injury and causation elements of a CPA claim as a matter of law." *Wright*, 189 Wash 2d at 724. On the certified question whether CEMA's liquidated-damages provision establishes the CPA's injury and causation elements as a matter of law, the *Wright* court answered "yes"— twice. *Id.* at 722–23, 732. As the court explained, "it is nonsensical for the legislature to write a damages provision free of preconditions, only for this court to read in elements that lawmakers did not include." *Id.* at 729. Neostrata's suggestion that a plaintiff must plead injury separately from the CEMA violation itself asks this Court to add a precondition to a damages provision the Legislature wrote free of one. Nor is it consistent with subsequent federal decisions applying CEMA. *See Ma*,



CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
TEL. 317.636.6481 FAX 317.636.2593

816 F. Supp. 3d at 1233 (holding that allegations that a defendant sent commercial emails with false or misleading subject lines regarding the duration or availability of promotions were sufficient); *Stevens-Hills*, 2026 WL 1741316, at *5 (citing *Brown* and explaining that "the injury is receiving the e-mail that violates CEMA"); *Repperger*, 2026 WL 1157157, at *3 (same).

**CONCLUSION**

For the foregoing reasons, Defendant's Motion should be denied.

*[Signature page to follow]*



CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
TEL. 317.636.6481 FAX 317.636.2593

Dated: September 21, 2026

Respectfully Submitted:

*I certify that this memorandum contains no more than 8,025 words, in compliance with the Local Civil Rules.*

*/s Lynn A. Toops*
Lynn A. Toops *admitted pro hac vice*
Natalie A. Lyons*
Ian R. Bensberg*
**COHENMALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Tel.: (317) 636-6481
ltoops@cohenmalad.com
nlyons@cohenmalad.com
ibensberg@cohenmalad.com

*/s Samuel J. Strauss*
Samuel J. Strauss, WSBA No. 46971
Raina C. Borrelli *admitted pro hac vice*
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, IL 60611
Tel.: (872) 263-1100
sam@straussborrelli.com
raina@straussborrelli.com

Michael C. Tackeff*
J. Gerard Stranch, IV*
Andrew K. Murray*
**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Tel.: (615) 254-8801
mtackeff@stranchlaw.com
gstranch@stranchlaw.com
amurray@stranchlaw.com

*Attorneys for Plaintiff*
*** Applications for admission *pro hac vice* forthcoming**