*Honorable Tiffany M. Cartwright*

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

TIFFANY SHEFFIELD, on their own behalf and on behalf of others similarly situated,

Plaintiff,

v.

NEOSTRATA COMPANY, INC. D/B/A NEOSTRATA AND EXUVIANCE,

Defendants.

No. 3:26-cv-5764

DEFENDANT NEOSTRATA COMPANY, INC.'S RESPONSE TO ORDER TO SHOW CAUSE



DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA 98104-7029 | Tel: 206.839.4800

**TABLE OF CONTENTS**

I. INTRODUCTION .......... 1
II. BACKGROUND .......... 2
III. ARGUMENT .......... 3
A. The Court Should Stay This Action Until the Ninth Circuit's Resolution of *Montes.* .......... 3
B. Remand Is Not Warranted Because Plaintiff Has Alleged a Concrete Article III Injury .......... 4
1. Plaintiff Alleges an Injury in Fact Traditionally Actionable at Common Law .......... 4
2. Plaintiff Alleges an Injury Traceable to NeoStrata .......... 7
3. Plaintiff's Alleged Injury is Redressable by Judicial Order .......... 7
C. Remand Would Be Futile, Because the Complaint Would Require Dismissal in Either State or Federal Court .......... 7
IV. CONCLUSION .......... 8



DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA 98104-7029 | Tel: 206.839.4800

## I. INTRODUCTION

Defendant NeoStrata Company, Inc. ("NeoStrata") respectfully submits this response to the Court's September 9, 2026 Order to Show Cause (the "Order") concerning its subject matter jurisdiction over Plaintiff Tiffany Sheffield's Complaint ("Compl.").[1] Courts in this District have reached widely diverging conclusions about whether violations of Washington's Commercial Electronic Mail Act ("CEMA") constitute a concrete injury conferring Article III standing. However, the Ninth Circuit's pending decision in the appeal of *Montes v. Catalyst Brands LLC*, 2025 WL 3485827, at *2-3 (E.D. Wash. Dec. 4, 2025), No. 26-241 (9th Cir.), will soon resolve this disputed question of law. As such, if the Court has any doubts about its jurisdiction, it should stay this litigation until the resolution of *Montes*. A stay would prevent unnecessary expenditure of party and Court resources and poses no prejudice to Plaintiff. At the very least, a stay ensures that any ruling on jurisdiction rests on the Ninth Circuit's binding precedent rather than the conflicting analyses of divided district courts.

If the Court is inclined to rule on the standing for CEMA claims before the Ninth Circuit hears that same issue in *Montes*, then it should find Plaintiff's allegations of specific harm arising from the challenged emails constitute a concrete injury under Article III. The Ninth Circuit has recognized a historical and common-law test for identifying the concrete harms conferring Article III standing. Here, Plaintiff alleges specific harms such as deceptive commercial emails that purportedly waste her time, distort her purchasing decisions, and cause her annoyance and harassment. These are the same harms that the Washington Legislature enacted CEMA to address, which is entitled to significant weight under Supreme Court and Ninth Circuit authority. That judgment is reinforced by the close relationship between these harms and traditional nuisance and invasion-of-privacy torts, satisfying the Ninth Circuit's historical law test for Article III standing.

In any event, NeoStrata's pending Motion to Dismiss, ECF 18, explains that the Complaint requires dismissal as a matter of state law, for reasons that are equally applicable in state or federal

[1] NeoStrata was improperly named as NeoStrata Company, Inc. d/b/a Neostrata and Exuviance.



DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA 98104-7029 | Tel: 206.839.4800

court. As such, remand would be futile, and the Court should follow the ample Ninth Circuit precedent instructing it to grant dismissal instead of burdening the state courts with a futile case.

**II. BACKGROUND**

Plaintiff alleges that 40 NeoStrata emails contain false promotional deadlines in their subject lines that were supposedly contradicted by 24 other emails from NeoStrata in violation of CEMA. As to harm, the Complaint does not rest on a bare statutory violation. Plaintiff alleges that NeoStrata's purported false urgency wastes consumers' time and "floods" consumers' email inboxes. Compl. ¶ 5. Beyond simple "annoyance" and having to sift through an unusable inbox of spam, Plaintiff claims tangible harm – both as to her individually and as to consumers at large. Specifically, the Complaint sets forth a theory of reliance and inducement, whereby Plaintiff claims that NeoStrata's emails allegedly cause consumers to make purchases that they otherwise would not have made. *Id*. ¶¶ 4-7, 34-37. And, even when consumers aren't prompted to make a purchase, the receipt of these emails still causes harm because, according to Plaintiff, they increase what consumers actually pay and prevent them from identifying true discounts. *Id*. ¶¶ 7, 36-38, 140. In other words, Plaintiff purportedly is thwarted from receiving important information and acquiring products that she *does* want because of NeoStrata's allegedly deceptive marketing. As set forth below, these allegations establish an Article III injury for jurisdictional purposes.

While the Complaint alleges an injury in fact, it still requires dismissal. Plaintiff alleges only four of the 40 challenged emails were sent to Plaintiff herself. Compl. ¶¶ 49-50, 62-63, 127-129, 143-145. However, Plaintiff does not allege that she received any of the so-called extensions, meaning that her own deadlines were all true as to her. ECF 18 at 15. For this reason and many others identified in NeoStrata's Motion to Dismiss, the Complaint would require dismissal in either state or federal court.

Plaintiff seeks to represent a four-year class of Washington citizens estimated to include "thousands of members," seeking $500 per violation trebled to $1,500, plus injunctive relief — arithmetic that, across 40 challenged subject lines and a mailing list alleging averaging 422 emails per year, forecasts damages approaching nine figures. Compl. ¶¶ 133, 148-52, 175; Prayer ¶¶ B-D.


DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA 98104-7029 | Tel: 206.839.4800

## III. ARGUMENT

As set forth below, NeoStrata believes that this Court has subject-matter jurisdiction over Plaintiff's claims and that the Court can and should grant NeoStrata's pending motion to dismiss. However, if the Court has doubts about Article III standing in CEMA cases, the Ninth Circuit's impending ruling should put them to rest.[2]

### A. The Court Should Stay This Action Until the Ninth Circuit's Resolution of *Montes.*

A stay is appropriate where (1) the possible harm from a stay is minimal, (2) the hardship of going forward is substantial, and (3) the stay serves the orderly course of justice by simplifying issues and questions of law. *Arcand v. Catalyst Brands*, 2026 WL 369417, at *2-3 (W.D. Wash. Feb. 10, 2026). All three factors favor a stay in this matter. Plaintiff's Complaint was filed on June 10 and removed on July 10, NeoStrata's Motion to Dismiss is not yet fully briefed, and the parties have not begun discovery. Because this case is still in its infancy, any harm is minimal and a stay will not impose any undue hardship or inequity on Plaintiff. *See, e.g.*, *Am. GNC Corp. v. Nintendo Co.*, 2024 WL 2154227, at *2 (W.D. Wash. May 14, 2024) (mere delay "is not enough" to establish undue prejudice). A stay would promote judicial economy by allowing this Court to receive guidance from the Ninth Circuit on the threshold question of Article III standing. It will also protect congressional intent, under CAFA, that federal courts preside over relevant class actions.

As noted by numerous courts in this District, a stay is therefore the appropriate course. *See Bajwa v. National Automotive Parts Association LLC*, Case No. 2:25-cv-02280-RAJ at Dkt. 38 (W.D. Wash. Sep. 23, 2026) ("requiring the parties to go forward pending the Ninth Circuit's resolution of Montes II risks inconsistent rulings, wasted judicial and attorney resources, and duplicative proceedings"); *Meadows v. Lands' End, Inc.*, 2026 WL 2581947, at *3 (W.D. Wash. Sept. 1, 2026) (collecting cases and concluding that *Montes* "will be dispositive on the threshold

---

[2] The reasons for standing here are even broader than in *Montes*, since in this case, the Plaintiff claims she was personally harmed by emails that allegedly distracted and misled her, and prevented her (and other consumers) from identifying truthful information. *See Montes*, 2025 WL 3485827, at *2 ("Plaintiff does not allege any actual harm").



DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA 98104-7029 | Tel: 206.839.4800

Article III jurisdictional question"); *Liss v. Skechers USA Inc.*, 2026 WL 2500999, at *1 (W.D. Wash. Aug. 25, 2026) ("[T]he Court finds it prudent to stay this case pending guidance from the Ninth Circuit, which will significantly impact … CEMA cases currently before the Court"); *Talley v. Everlane, Inc.*, No. C26-0007-KKE, ECF 28 (W.D. Wash. June 12, 2026).

Accordingly, if the Court believes the issue of Article III standing is an open question, in the interest of conserving party resources and promoting judicial economy, the Court should stay this action pending the resolution of *Montes*.

**B. Remand Is Not Warranted Because Plaintiff Has Alleged a Concrete Article III Injury.**

In the event that the Court is inclined to proceed with this case, its jurisdiction is assured. In order to have Article III standing, a plaintiff must plead: (i) an "injury in fact"; (ii) that is "fairly traceable"; and (iii) redressable. *Friends of the Earth, Inc. v. Laidlaw Env't Services (TOC), Inc.*, 528 U.S. 167, 180-81 (2000). In this case, Plaintiff's specific allegations of harm suffice.[3]

***1. Plaintiff Alleges an Injury-in-Fact Traditionally Actionable at Common Law.***

To establish injury-in-fact, a plaintiff must plead that she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016); *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). As this Court explained: "[i]n *TransUnion*, the Supreme Court reaffirmed the preexisting rule that an intangible injury qualifies as 'concrete' when that injury bears a 'close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts.'" *Brinton v. Vivint Inc.*, 2024 WL 3688589, at *2 (W.D. Wash. Aug. 7, 2024).

The Washington Legislature enacted CEMA to protect consumers from specific harms associated with the receipt of false or misleading commercial emails, including increased data

[3] For this threshold inquiry, the Court accepts well-pleaded factual allegations as true, not whether they state a viable statutory claim. *Maya v. Centex Corp.*, 658 F.3d 1060, 1067-68 (9th Cir. 2011). NeoStrata's position that the Complaint alleges the constitutional minimum for standing does not concede that Plaintiff has articulated sufficient claims.



DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA 98104-7029 | Tel: 206.839.4800

storage costs and time required to wade through unwanted messages. *See State v. Heckel*, 143 Wn.2d 824, 835 (2001) (recognizing that "all Internet users (along with their ISPs) bear the cost of deceptive spam," including "[i]ndividuals who do not have flat-rate plans for Internet access but pay instead by the minute or hour"). This statutory framework reflects the Legislature's determination that such harms constitute a concrete, compensable injury. *Jones v. Ford Motor Co.*, 85 F.4th 570, 574 (9th Cir. 2023); *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017). The Legislature "is well positioned to identify intangible harms that meet minimum Article III requirements," and its judgment is entitled to significant weight. *See Spokeo*, 578 U.S. at 340-41. *Devivo v. Sheex Inc.*, 2026 WL 1734589, at *2 (W.D. Wash. June 16, 2026) (concluding plaintiff "suffered injury in precisely the form [CEMA] was intended to guard against").

Article III "does not require an exact duplicate in American history and tradition." *TransUnion*, 594 U.S. at 424; *Popa v. Microsoft Corp.*, 153 F.4th 784, 791 (9th Cir. 2025) ("[M]any courts require a match only in the kind of harm and not the degree."). Nonetheless, the Complaint itself acknowledges the common law basis for CEMA claims, alleging "the harms resulting from deceptive commercial e-mails … resemble the type of harms remedied by nuisance or fraud." Compl. ¶ 24. Plaintiff specifically alleges that NeoStrata's emails waste her time, flood her inbox with repeated false notifications, steer her away from better deals, and cause annoyance and harassment. Compl. ¶¶ 5-7, 9, 36-38, 140. This type of harm maps clearly onto the traditional harms recognized by common-law nuisance and invasion-of-privacy torts. *See, e.g., Brinton*, 2024 WL 3688589, at *3 ("[T]he recipient of unsolicited emails suffers an injury, whether in the form of 'lost productivity and resources, annoyance, consumption of valuable digital storage space and financial costs,' in addition to the foundational injuries to privacy and freedom from nuisance."); *Liss*, 2026 WL 1392327, at *3 (plaintiffs "alleged an 'invasion of privacy or [a] similar injury to constitute a concrete harm[]'"); *Harbers v. Eddie Bauer, LLC*, 415 F. Supp. 3d 999, 1005 (W.D. Wash. 2019) ("The harms resulting from deceptive commercial e-mails resemble the type of harms remedied by nuisance or fraud actions."); *Hoffman v. One Techs., LLC*, 2017 WL 176222, at *2



DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA 98104-7029 | Tel: 206.839.4800

(W.D. Wash. Jan. 17, 2017). Notably, even after *TransUnion*, the Ninth Circuit has recognized that spam creates a concrete injury sufficient to confer Article III standing. *Wakefield v. ViSalus, Inc.*, 51 F.4th 1109, 1118 (9th Cir. 2022).

Recent decisions do not compel a different result. In *Montes*, the plaintiffs pleaded bare statutory violations without alleging actual harm or addressing CEMA's ancestry in nuisance torts. 2025 WL 3485827, at *2-3. In *Nuri v. True Religion Apparel*, 2026 WL 864886 (W.D. Wash. Mar. 30, 2026), the "complaint stemmed from the *content* of True Religion's emails, rather than the *volume* of emails itself, [such that defendant's] argument about wasted email inbox space as an Article III injury was unpersuasive." *Liss*, 2026 WL 1392327, at *3 (finding Article III injury based upon "expos[ure] to 'unanticipated and unwanted volumes of commercial email'"). By contrast, Plaintiff's allegations here are like those that did confer standing in *Liss*, alleging harms in the "sheer volume of email marketing" allegedly sent by NeoStrata. Compl. ¶ 133.

The scale of Plaintiff's claims reinforces this point. The alleged damages purport to approach nine figures—with thousands of members across a four-year class, each seeking $1,500 across 40 challenged subject lines—precisely the kind of allegations Congress enacted CAFA to bring into federal court. It would be anomalous to hold that an injury is concrete enough for that size of recovery, but too abstract for Article III. *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014).

*Samaduroff v. David Peyser Sportswear Inc.* is distinguishable, since the plaintiffs did not allege the defendant "added them to or kept them on its mailing list without consent." 2026 WL 2675977, at *2 (W.D. Wash. Sept. 11, 2026).[4] Here, by contrast, Plaintiff alleges any consent was "a fiction" due to commercial data sharing (Compl. ¶¶ 18-20), draws a direct connection between NeoStrata's marketing and consumer purchases (Compl. ¶¶ 4-6, 34-37), and purportedly continues to receive emails from NeoStrata (*compare Samaduroff*, 2026 WL 2675977 at *2, *with* Compl. ¶¶

[4] NeoStrata respectfully notes that *Samaduroff* was also mistaken in relying on a "strong presumption against removal jurisdiction," *id.*, at *1, since unlike other forms of removal, there is "no antiremoval presumption" for cases subject to CAFA. *Dart Cherokee*, 574 U.S. at 89.



DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA 98104-7029 | Tel: 206.839.4800

140-147). As *Liss* explains, such allegations assert "an invasion of privacy" sufficient to create an injury-in-fact "constitut[ing] a concrete harm by virtue of receiving unsolicited and harassing emails." 2026 WL 1392327 at *3.

### *2. Plaintiff Alleges an Injury Traceable to NeoStrata.*

"An injury is 'fairly traceable' where there is a causal connection between the injury and the defendant's challenged conduct." *Wit v. United Behav. Health*, 79 F.4th 1068, 1083 (9th Cir. 2023). Plaintiff claims injury because NeoStrata sent her misleading emails in violation of CEMA. Compl. ¶¶ 30, 98-100, 121. These allegations show the required causal link. *Id*.

### *3. Plaintiff's Alleged Injury is Redressable by Judicial Order.*

Plaintiff's alleged injury is "likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338. Plaintiff seeks statutory damages and injunctive relief requiring NeoStrata to comply with CEMA and the CPA. Either remedy would redress the alleged injury.

## C. Remand Would Be Futile, Because the Complaint Would Require Dismissal in Either State or Federal Court.

Finally, remand would be improper because dismissal, rather than remand, is the appropriate remedy for a case requiring dismissal in either state or federal court. The Ninth Circuit has repeatedly held it is futile to remand a case requiring dismissal in state court, so the District Court should dismiss it instead. *Sauk-Suiattle Indian Tribe v. City of Seattle*, 56 F.4th 1179, 1189 (9th Cir. 2022) ("[O]ur precedent recognizes a futility exception to that [remand] requirement."); *Bell v. City of Kellogg*, 922 F.2d 1418, 1424 (9th Cir. 1991) ("Where the remand to state court would be futile, … the desire to have state courts resolve state law issues is lacking.").

Here, NeoStrata's pending Motion to Dismiss explains the Complaint fails to allege a cognizable theory, because Plaintiff alleges that she received only four of the 40 challenged emails, and ***none*** of the so-called extensions. Mot. to Dismiss, ECF 18 at 15. Thus, the Complaint fails to state a claim, as a matter of ***state*** law, because Plaintiff's own deadlines were all true as to her. *Id*.

These reasons for dismissal (and the many others discussed in the Motion) are equally binding in state court, where the Complaint would also require dismissal as a matter of law. *See*



DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA 98104-7029 | Tel: 206.839.4800

*Erwin v. Seattle Times Co.*, 2026 WL 2323137, at *1 (King Cnty. Sup. Ct. Aug. 5, 2026) (granting motion to dismiss CEMA claim because its "theory of deception based on 'extended sales' is not cognizable"). Thus, any remand would be futile, so the case should be dismissed rather than remanded. *See, e.g.*, *Strojnik v. Driftwood Hosp. Mgmt., LLC*, 2022 WL 1642234, at *1 (9th Cir. May 24, 2022) (denying motion to remand as futile); *Erickson v. JPMorgan Chase Bank, N.A.*, 2024 WL 841466, at *5 (W.D. Wash. Feb. 28, 2024) ("remand would be futile."); *Campbell v. City of Seattle*, 2022 WL 17361290, at *2 (W.D. Wash. Dec. 1, 2022) ("Presuming—without deciding—that the Court lacks jurisdiction over this action, the Court finds that remand would be futile …"). The Court should take the same approach here.

## IV. CONCLUSION

For these reasons, NeoStrata respectfully requests that the Court stay this action pending *Montes*. In the alternative, the Court should find that it has subject matter jurisdiction, decline to remand, and grant NeoStrata's Motion to Dismiss.

Dated: September 23, 2026

**DLA PIPER LLP (US)**

By: */s/ David Freeburg**
David Freeburg, WSBA No. 48935
701 Fifth Avenue, Suite 6900
Seattle, Washington 98104-7029
Tel: 206.839.4812
Email: *David.Freeburg@us.dlapiper.com*

AND

Angela C. Agrusa (*pro hac vice*)
Erin T. Huntington (*pro hac vice*)
2000 Avenue of the Stars, Suite 400 North Tower
Los Angeles, California 90067-4704
Tel: 310.595.3000
Email: *Angela.Agrusa@us.dlapiper.com*
Email: *Erin.Huntington@us.dlapiper.com*

*Attorneys for Defendant NeoStrata Company, Inc.*

** I certify that this memorandum contains 2,786 words, in compliance with the Court's September 9, 2026 Order.*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 23, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all parties or their counsel of record.

Dated this 23rd day of September, 2026.

*s/ Kiersten Houst*
Kiersten Houst, Legal Executive Assistant