UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| TIFFANY SHEFFIELD, on her own behalf and on behalf of others similarly situated,<br>Plaintiff,<br>v.<br>NEOSTRATA COMPANY, INC. d/b/a NEOSTRATA AND EXUVIANCE,<br>Defendant. | Case No. 3:26-cv-05764-TMC<br>ORDER REMANDING CASE |

## I. INTRODUCTION AND BACKGROUND

This case is a proposed class action against Defendant NeoStrata Company, Inc. ("NeoStrata") for allegedly sending false and misleading emails in violation of Washington's Commercial Electronic Mail Act ("CEMA"), RCW 19.190, and Washington's Consumer Protection Act ("CPA"), RCW 19.86. *See* Dkt. 3-1.

On June 10, 2026, Plaintiff Tiffany Sheffield filed a putative class complaint against NeoStrata in Pierce County Superior Court. *Id.* Sheffield alleges that NeoStrata "has spammed" her and other Washington consumers "with commercial emails whose subject lines contain false or misleading statements in violation of her right to be free from such annoyance and harassment

under CEMA." *Id.* ¶ 140; *see also id.* ¶ 4. She describes a "deceptive" marketing scheme whereby NeoStrata sends emails announcing time-limited sales and promotions that are later extended. *Id.* ¶¶ 39–131. She specifically points to four emails she received from NeoStrata between 2022 and 2026, each of which she alleges contained a "false or misleading" subject line. *Id.* ¶¶ 140–47.

On July 10, NeoStrata removed the case to federal court based on diversity jurisdiction under the Class Action Fairness Act ("CAFA"). Dkt. 3. On August 31, it moved to dismiss, arguing that Sheffield failed to state a claim under CEMA or the CPA. Dkt. 18. After reviewing the complaint, the Court determined that "it is not apparent that Sheffield has alleged an Article III as opposed to merely a statutory injury" and ordered NeoStrata to show cause why this case should not be remanded to Pierce County Superior Court for lack of standing. Dkt. 19 at 4. On September 23, NeoStrata responded to the show cause order. Dkt. 23. It then moved to continue several case deadlines until after the resolution of the order to show cause and the motion to dismiss. Dkt. 26.

The Court concludes that Sheffield lacks Article III standing and REMANDS this case to Pierce County Superior Court.

## II. LEGAL STANDARD

Both the Supreme Court and the Ninth Circuit "have held that whether or not the parties raise the issue, federal courts are required sua sponte to examine jurisdictional issues such as standing." *D'Lil v. Best W. Encina Lodge & Suites*, 538 F.3d 1031, 1035 (9th Cir. 2008) (internal quotation marks, alteration, and emphasis omitted) (quoting *Bernhardt v. County of Los Angeles*, 279 F.3d 862, 868 (9th Cir. 2002)). Removal of a civil action to federal district court is proper when the federal court would have original jurisdiction over the state court action. 28 U.S.C. § 1441(a). Although there is "no antiremoval presumption" for cases removed pursuant to

CAFA, the removing party must put forth evidence establishing jurisdiction if "the court questions[ ] the defendant's allegation[s]." *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014).

Moreover, as the party invoking federal jurisdiction, NeoStrata bears the burden of establishing the existence of a case or controversy under Article III. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *see also Tailford v. Experian Info. Sols., Inc.*, 26 F.4th 1092, 1099 (9th Cir. 2022). "To establish Article III standing, an injury must be 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010)). "Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016). For an injury in fact to exist, a statutory violation must have "caused [a plaintiff] to suffer some harm that 'actually exist[s]' in the world; there must be an injury that is 'real' and not 'abstract' or merely 'procedural.'" *Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1112 (9th Cir. 2017) (second alteration in original) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. at 340–41). "[A] plaintiff does not 'automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" *Id.* (alteration in original) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. at 341). Furthermore, "standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021).

## III. DISCUSSION

NeoStrata argues that the Court should not remand this case because Sheffield has alleged a concrete injury sufficient for Article III standing. Dkt. 23 at 6–9. In the alternative, it

asks the Court to stay this case pending the Ninth Circuit's resolution of *Montes v. Penney OpCo, LLC*, No. 26-241, which concerns a similar legal question. *Id.* at 5–6; *see Montes v. Catalyst Brands LLC*, No. 2:25-CV-0281-TOR, 2025 WL 3485827, at *2 (E.D. Wash. Dec. 4, 2025) (concluding that the receipt of emails allegedly in violation of CEMA and the CPA is not an injury-in-fact for the purposes of Article III standing). The Court addresses each of these arguments in turn.

**A. Sheffield lacks Article III standing.**

The Washington Supreme Court recently held that "CEMA does not require a showing of injury for statutory damages to be awarded because the injury is receiving the e-mail that violates CEMA." *Brown v. Old Navy, LLC*, 4 Wn.3d 580, 592, 567 P.3d 38 (2025). But the legislature's creation of a statutory injury does not automatically confer Article III standing. *TransUnion*, 594 U.S. at 426–27. Instead, "[o]nly those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." *Id.* at 427. In other words, for this Court to have either original or removal jurisdiction, a CEMA plaintiff must have alleged that she has "suffered a harm that has traditionally been actionable in our nation's legal system." *Popa v. Microsoft Corp.*, 153 F.4th 784, 791 (9th Cir. 2025).

In *Samaduroff v. David Peyser Sportswear, Inc.*, this Court held that "the mere receipt of alleged misleading or false marketing email subject lines, absent any allegation of economic loss, detrimental reliance, or any comparable injury, does not constitute a concrete harm sufficient to establish Article III injury." No. 3:26-CV-05275-TMC, 2026 WL 2675977, at *2 (W.D. Wash. Sept. 11, 2026) (quoting *Stutsman v. Sirius XM Radio LLC*, No. 2:25-CV-01113-LK, 2026 WL 2445129, at *4 (W.D. Wash. Aug. 20, 2026)). While the Court acknowledges the contrary

decisions cited by NeoStrata, *see* Dkt. 23 at 6–7, the facts of this case give the Court no reason to depart from its holding in *Samaduroff*.[1]

NeoStrata asserts that Sheffield "specifically alleges that NeoStrata's emails waste her time, flood her inbox with repeated false notifications, steer her away from better deals, and cause annoyance and harassment." *Id.* at 7. However, while NeoStrata points to a generalized allegation that "privacy consent" in the commercial email context is "a fiction," Dkt. 23 at 8 (citing Dkt. 3-1 ¶¶ 18–20), Sheffield does not allege that she personally received any emails without her real and meaningful consent. *See* Dkt. 3-1 ¶¶ 140–47. Moreover, although Sheffield alleges that NeoStrata's marketing tactics are intended to influence consumer choices, *see id.* ¶¶ 4–6, 34–37, the complaint does not contain any allegation that Sheffield herself made a purchase from NeoStrata in reliance on a false or misleading email subject line, or that she personally faces a risk of doing so in the future. "[A]nnoyance and harassment," on their own, are not sufficiently connected to traditional harms like nuisance, fraud, or invasion of privacy, which involve nonconsensual conduct or reliance.

With these circumstances in mind, Sheffield lacks standing to pursue either damages or injunctive relief. First, "in a suit for damages, the mere risk of future harm, standing alone, cannot qualify as a concrete harm." *TransUnion*, 594 U.S. at 436. Sheffield alleges no "economic loss, detrimental reliance, or any comparable injury" arising from the emails she received, foreclosing her ability to seek damages for NeoStrata's alleged conduct. *Samaduroff*,

---

[1] NeoStrata suggests that this Court's order in *Samaduroff* was "mistaken" in applying a presumption against removal. Dkt. 23 at 8 n.4. NeoStrata is correct that "no antiremoval presumption attends cases invoking CAFA." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014); *see* Dkt. 19 at 2 (noting that the presumption does not apply "for cases removed pursuant to CAFA"). This principle was not applicable in *Samaduroff*, where the defendant invoked traditional diversity jurisdiction in removing the case. *See* Case No. 3:26-cv-05275-TMC, Dkts. 1, 22.

2026 WL 2675977, at *2 (quoting *Stutsman*, 2026 WL 2445129, at *4). Second, while "a person exposed to a risk of future harm may pursue forward-looking, injunctive relief to prevent the harm from occurring," that risk must be "sufficiently imminent and substantial." *TransUnion*, 594 U.S. at 435. Although Sheffield claims to have previously received false or misleading emails from NeoStrata, "[k]nowledge that the advertisement or label was false in the past does not equate to knowledge that it will remain false in the future." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969 (9th Cir. 2018). And even assuming that the emails will continue, Sheffield does not allege that they will affect her own purchasing habits in any way. *See id.* at 969–70 (explaining that threats of future harm from false advertising may include plausible allegations that a consumer "will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to" or "that she might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as she may reasonably, but incorrectly, assume the product was improved"). In short, no allegations of *imminent* risk are present in Sheffield's complaint. Injunctive relief is thus unavailable.

NeoStrata argues that remand would be "futile" because Sheffield's case will be subject to dismissal on the merits in either forum. Dkt. 23 at 9–10. But NeoStrata has not shown with "absolute certainty" that a state court would dismiss the action or that the complaint could not be saved by amendment in state court. *See Sauk-Suiattle Indian Tribe v. City of Seattle*, 56 F.4th 1179, 1189–90 (9th Cir. 2022) (quoting *Glob. Rescue Jets, LLC v. Kaiser Found. Health Plan, Inc.*, 30 F.4th 905, 920 n.6 (9th Cir. 2022)) (explaining that, even if the futility exception remains good law, it applies only when there is "absolute certainty" that the state court would dismiss the action). In concluding that Sheffield lacks standing, the Court decides only a threshold "jurisdictional question" that "precedes . . . analysis of the merits." *Equity Lifestyle Props., Inc.*

*v. County of San Luis Obispo*, 548 F.3d 1184, 1189 n.10 (9th Cir. 2008). And in determining that Sheffield does not allege a concrete injury for the purposes of Article III, the Court makes no ruling as to Sheffield's standing to sue NeoStrata in state court. The Court declines NeoStrata's invitation to consider the merits of a matter over which it lacks jurisdiction.

**B. The Court declines to stay this case pending the outcome of *Montes v. Penney OpCo, LLC*.**

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). To that end, a district court has discretion to grant or deny a request for a stay. *Nken v. Holder*, 556 U.S. 418, 433 (2009). As the party requesting a stay, NeoStrata "bears the burden of showing that the circumstances justify an exercise of that discretion." *Id.* at 433–34. In determining whether to issue a stay, a court should consider four factors:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Id.* at 434 (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1989)).

For the reasons expressed above, NeoStrata has not made a strong showing that the *Montes* case is likely to result in a decision favorable to NeoStrata on the question of Article III standing. Taken together, the remaining factors also weigh against issuing a stay in this instance. NeoStrata alleges no harm, irreparable or otherwise, that it may face from the imposition of a stay. *See* Dkt. 23 at 5–6. To the extent that the public—a purported class of Washington consumers—is implicated in this case, it serves the public interest for this case to be litigated sooner rather than later. And although there is no evidence that Sheffield would be "substantially injure[d]" by a stay, NeoStrata does not proffer sufficient reason to postpone the resolution of her

claims. While NeoStrata argues that the Court would benefit from the Ninth Circuit's guidance on this question, *id.* at 5, the same is true of the hundreds of other matters pending before the appeals court at any given time. To delay this case for an indeterminate amount of time while awaiting the outcome of an appeal in a separate matter would not be economical for the Court, for counsel, or for litigants.

## IV. CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

1. The above-captioned case is REMANDED to the Pierce County Superior Court.
2. The pending motion to dismiss (Dkt. 18) and motion to continue Rule 26(f) conference and initial case deadlines (Dkt. 26) are DENIED as moot.
3. The Clerk shall mail a certified copy of this Order to the Clerk of Court for the Pierce County Superior Court.
4. The Clerk shall transmit the record herein to the Clerk of Court for the Pierce County Superior Court.
5. The Clerk shall close this case.

Dated this 8th day of October, 2026.

Tiffany M. Cartwright
United States District Judge